UNITED STATES of America, Appellee,

v.

Gregory Lynn CUMMINS, Appellant.

UNITED STATES of America, Appellee,

v.

Timothy AKINS, a/k/a Michael Mayfield, Appellant.

Nos. 90–1050, 90–1199.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 29, 1990.

Decided Nov. 30, 1990.

Rehearing and Rehearing En Banc Denied Jan. 17, 1991.

Craig Lambert, Little Rock, Ark., for Cummins.

Robert Adcock, Little Rock, Ark., for Akins.

Patrick Harris, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before McMILLIAN, BOWMAN, Circuit Judges, and CAHILL,* District Judge.

BOWMAN, Circuit Judge.

Defendants Gregory Lynn Cummins and Timothy Akins appeal the denial by the District Court[1] of their motions to suppress evidence seized during searches of automobiles in two separate traffic incidents. Both defendants entered a conditional plea of guilty to drug trafficking and firearm offenses reserving the right to appeal the denial of their motions to suppress. We affirm.

I.

The first traffic incident in question involved both Cummins and Akins. On November 10, 1988, at approximately 11:40 p.m., the unusual behavior of occupants of a 1974 green Volkswagen caught the attention of Officer Dan Bernal, a seven-year veteran of the Little Rock Police Department. Bernal, who was patrolling east on Sixth Street, was stopped for a red light at the intersection of Bond and Sixth in Little Rock, Arkansas. The Volkswagen, northbound on Bond Street, remained at a standstill despite the green light signalling it to proceed. Rather than proceeding, the driver (Cummins), along with his passenger (Akins), kept glancing at Bernal. Not until the signal changed to red for the Bond Street traffic did Cummins finally proceed by turning right onto Sixth Street. These actions aroused Bernal's suspicions and he began to follow the car. For several blocks along Sixth Street, Cummins and Akins continued glancing over their shoulders at Officer Bernal, who was maintaining a distance of approximately four car-lengths behind them. This surveillance-in-motion came to a momentary halt when the Volkswagen turned off Sixth Street into a closed car wash. Cummins and Akins then continued to watch Bernal, who had pulled into a service station across the street. When the Volkswagen left the car wash and continued east on Sixth Street, Bernal followed it. At the intersection of Sixth and Corning, Cummins made a right turn without giving a signal. Observing this traffic violation, Bernal immediately turned on his bluelights. Cummins stopped, got out of the Volkswagen, and approached Bernal as he was getting out of the police car.

After explaining the reason for the stop and obtaining Cummins' license, Bernal asked Cummins to explain his unusual behavior. Cummins replied that he had been distracted by his passenger's conversation

---

* The HONORABLE CLYDE S. CAHILL, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Elsijane T. Roy, Senior United States District Judge for the Eastern District of Arkansas.

about "girlfriend problems" and said the passenger's name was "Tim." Cummins appeared very nervous throughout this exchange. After calling the police department for a license and vehicle check, Bernal walked over to the Volkswagen and asked the passenger for his name. Akins identified himself as "Michael Mayfield." This inconsistency further aroused Bernal's suspicions. He returned to his car and radioed for a back-up. Within five minutes, Officer Jim McDaniels arrived. Cummins stayed with McDaniels while Bernal returned to the Volkswagen to ask Akins for proof of identification. The name on the driver's license he produced was "Timothy Akins." Bernal escorted Akins to the patrol unit and placed him in the back seat. Akins was evasive and appeared ready to flee if given the opportunity.

Bernal returned to the Volkswagen and looked inside with his flashlight. He saw a clear plastic bag containing what appeared to be marijuana on the floor behind the passenger's seat. As a result of this discovery, Bernal placed Cummins and Akins under arrest and called for a tow truck to remove the Volkswagen. Pursuant to police department procedures, Bernal began an inventory search of the Volkswagen in preparation for its impoundment. Inside the passenger compartment, Bernal found two beepers, a black shaving kit containing U.S. currency, a duffel bag containing marijuana and cocaine, a "Crown Royal" bag containing more drugs, and a loaded "Tech 9" semi-automatic pistol.

The second traffic incident involved only Akins. On January 26, 1989, Officers James Dickson and John Gourtney of the Little Rock Police Department were called to the scene of a single-car accident. A Chevrolet Chevette had crashed into the front-yard fence of a residence. Although no one was in the car when the officers arrived, witnesses identified Akins, who was standing nearby, as the driver. When the officers tried to question Akins, they realized that he was either too drunk or too drugged to provide any coherent answers. The officers arrested Akins for driving while influenced by alcohol or drugs. After calling for a tow truck to remove Akins' car, the officers began an inventory search of the vehicle. In the passenger compartment, they found a loaded sawed-off shotgun, marijuana, and a sack containing crack, cocaine, and U.S. currency.

Cummins and Akins moved to suppress the evidence seized by the Little Rock police officers during the two separate traffic incidents. At the suppression hearing, Officer Bernal testified that he probably would not have stopped the green Volkswagen on November 10, 1988 for the traffic violation if the defendants had not behaved so suspiciously. Pointing to the officer's underlying motivation, the defendants argued that the initial stop was pretextual and any evidence seized in its wake should be suppressed. The magistrate[2] disagreed, finding that Bernal had a reasonable and objective basis for making the initial stop and that the resulting searches were proper. The magistrate also concluded that the motion to suppress evidence seized during the inventory search of Akins' car on January 26, 1989 should be denied. The district court adopted the magistrate's recommendations and denied the motions to suppress. For reversal, defendants reassert the arguments made during the proceedings below.

## II.

### A.

■ Defendants argue that Officer Bernal's initial stop of the green Volkswagen was pretextual, because his real reason for making the stop was based on his suspicions aroused by their strange behavior rather than on Cummins' failure to signal a right turn. The defendants conclude that the stop was unreasonable under the Fourth Amendment. We disagree. When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *United States v. Pillow*, 842 F.2d 1001 (8th Cir.1988). In

---

**2.** The Honorable H. David Young, United States   Magistrate, for the Eastern District of Arkansas.

our view, this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity. It is also our view that the stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions. Although the Supreme Court has not directly decided this issue, the Court has told us in unmistakable terms that we are to make "an objective assessment of the officer's actions." *Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* at 138, 98 S.Ct. at 1723. The Court's language leaves little doubt that "the officer's actual state of mind at the time the challenged action was taken," *Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985), is of no significance in determining whether a violation of the Fourth Amendment has occurred.[3]

Although our circuit has declared in dictum "that pretextual stops are unreasonable under the fourth amendment," *United States v. Portwood*, 857 F.2d 1221, 1223 (8th Cir.1988), *cert. denied*, 490 U.S. 1069, 109 S.Ct. 2073, 104 L.Ed.2d 638 (1989), when we apply *Scott*, noting the "standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved," 436 U.S. at 138, 98 S.Ct. at 1723, we cannot say that the stop here in question was pretextual. Officer Bernal had a legitimate reason—the traffic violation—for stopping the green Volkswagen and that is the end of our inquiry.

We reject the argument of Cummins and Akins that the applicable test is "not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose." *United States v. Smith*, 799 F.2d 704, 709 (11th Cir.1986) (emphasis in original). Only the Tenth and the Eleventh Circuits have adopted this test,[4] and we expressly decline to join them. Instead, we align ourselves with those circuits that approach the pretextual stop or arrest question under the standard of objective reasonableness articulated by the Supreme Court. *United States v. Trigg*, 878 F.2d 1037 (7th Cir.1989); *United States v. Causey*, 834 F.2d 1179 (5th Cir.1987); *United States v. Hawkins*, 811 F.2d 210 (3rd Cir. 1987), *cert. denied*, 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69. We thus agree with the conclusion expressed by the Seventh Circuit: "so long as the police are doing no more than they are legally permitted and objectively authorized to so, [the resulting stop or] arrest is constitutional." *Trigg*, 878 F.2d at 1041 (relying upon *Causey*, 834 F.2d at 1184 ("[T]he Court has told us that where police officers are objectively doing what they are legally authorized to do ... the results of their investigations are not to be called in question on the basis of any subjective intent with which they acted.")). Like these other circuits, we see no reason for requiring an officer's state of mind to perfectly match his legitimate actions. Such symmetry is not required by the Constitution. Accordingly, we hold that because Officer Bernal had probable cause to believe that a traffic violation had occurred, his initial stop of the car driven by Cummins was valid.

### B.

Our determination that a valid stop occurred does not end our inquiry, because

---

**3.** The officer's motive becomes relevant only after a determination is made that the Fourth Amendment actually was violated. When this threshold issue is resolved in the affirmative, the officer's state of mind may be relevant in determining whether the exclusionary rule should be applied.

*Scott*, 436 U.S. at 139 n. 13, 98 S.Ct. at 1724 n. 13. *See, United States v. Leon*, 468 U.S. 897,

104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (exclusionary rule inapplicable where officer's good faith belief that defective warrant was valid was an objectively reasonable belief).

**4.** *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988); *Smith*, 799 F.2d 704 (11th Cir.1986).

Cummins and Akins argue that the fruits of the search were fruits of an unreasonable detention. We disagree. Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), given the lawfulness of the initial stop, the question is whether the resulting detention was "reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20, 88 S.Ct. at 1879. Here, after stopping the green Volkswagen for the observed traffic violation, Officer Bernal asked Cummins why he failed to use his turn signal. This question was reasonably related to the purpose of the stop. Cummins answered that he had been distracted by his passenger's conversation. When Bernal attempted to confirm this explanation by questioning the passenger, he received an inconsistent answer. At this point, Bernal had justification for a greater intrusion unrelated to the traffic offense. The circumstances and unusual behavior he had encountered led him "reasonably to conclude in light of his experience that criminal activity may [have been] afoot." 392 U.S. at 30, 88 S.Ct. at 1884. The officer had observed and could articulate (1) the defendants' peculiar behavior at the traffic light; (2) their attempts to evade his surveillance by pulling into the closed car wash; (3) their continuous furtive glances in his direction; (4) the nervous and evasive behavior of each defendant when asked routine questions; and (5) the inconsistent answers concerning Akins' identity. The totality of the circumstances known to Officer Bernal met the requisite level of reasonable suspicion under *Terry* and entitled him to detain the defendants until he had satisfied his suspicions.

### C.

■ Cummins and Akins also argue that Officer Bernal's discovery of the marijuana on the rear floor of the car was invalid under the plain-view doctrine. There is no reason for us to address this particular argument because Bernal's actions were justified by the limited protective search doctrine. In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Court extended the *Terry* frisk of a person to a limited search of an automobile's interior. Similar to the facts here, the officers in *Long* discovered marijuana in the passenger compartment with the aid of a flashlight after stopping the driver for a traffic violation. Recognizing that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers," 463 U.S. at 1047, 103 S.Ct. at 3480, the Court held that once reasonable suspicion is established, a limited search of an automobile's interior is permissible. This limited search is no less permissible where, as here, the occupants have been removed from the automobile before the search is made. *See* 463 U.S. at 1052, 103 S.Ct. at 3482 ("the suspect may be permitted to reenter the vehicle before the *Terry* investigation is over, and again, may have access to weapons").

Officer Bernal's action of looking into the passenger compartment of the Volkswagen with a flashlight did not exceed the limitations of a *Terry* search. As we apply an objective standard of reasonableness to this determination, our conclusion is not changed by Bernal's testimony that he had no subjective fear that either Cummins or Akins were armed. We therefore hold that the marijuana discovered by Officer Bernal in the passenger compartment of the Volkswagen was not subject to suppression under the exclusionary rule.

### D.

■ Defendants' next argument that the search of the remainder of the car was without probable cause requires little discussion. Upon discovering the marijuana, Officer Bernal had probable cause to place defendants Cummins and Akins under arrest. The search of the Volkswagen which followed was permissible both as a search incident to arrest, *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and as an inventory search, *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). Because no Fourth Amendment violation occurred, the motion to suppress the evidence found during the search was properly denied.

### III.

Akins challenges the seizure of evidence in connection with his January 26, 1989 arrest. He claims that the inventory search of his car in which the officers discovered controlled substances and a loaded shotgun was invalid. He does not dispute the validity of his arrest for DWI.

An inventory search will be upheld unless there is a showing that the police failed to follow standard procedures, acted in bad faith, or conducted the search for the sole purpose of investigation. *See Bertine,* 479 U.S. at 372, 107 S.Ct. at 741. Akins has made no such showing. We therefore reject his challenge to the District Court's denial of his motion to suppress.

### IV.

Finding no reason for reversal, we affirm the decision of the District Court denying defendants' motions to suppress.