**UNITED STATES of America, Appellee,**

**v.**

**Gonzalo PEREIRA–MUNOZ, Appellant.**

No. 94–3535.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1995.

Decided July 14, 1995.

Dale E. Adams, Little Rock, AR, for appellant.

Kevin T. Alexander, Asst. U.S. Atty., Little Rock, AR, for appellee.

Before WOLLMAN, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Gonzalo Pereira–Munoz appeals from his conviction and sentence following his conditional plea of guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). We affirm.

## I.

On the afternoon of April 19, 1994, Trooper Joe Williams of the Arkansas State Police was conducting stationary radar surveillance on Interstate 40 (I–40) in St. Francis County, Arkansas. Williams observed Pereira–Munoz, a citizen of Honduras, traveling eastbound on I–40. Williams clocked Pereira–Munoz' speed at seventy-two miles per hour, seven miles per hour in excess of the speed limit. He confirmed with another officer, Trooper Clark, who was sitting in his police unit along I–40, that Pereira–Munoz was exceeding the speed limit. Williams then pulled Pereira–Munoz over.

Trooper Williams approached the vehicle and asked to see Pereira–Munoz' driver's license. Pereira–Munoz had both hands on the steering wheel, and Williams noticed that

* The Honorable Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

his hands were trembling and that he appeared nervous. When informed that he had been exceeding the speed limit, Pereira–Munoz vehemently disagreed, to the point that Williams felt that a confrontation might occur. To avoid any confrontation, Williams told Pereira–Munoz to wait in his vehicle. Williams then returned to his police vehicle to complete a check on the driver's license.

Shortly after returning to his police vehicle, Trooper Williams requested that Pereira–Munoz join him in the car. There they discussed the speed at which Pereira–Munoz was traveling. Pereira–Munoz was then sent back to his vehicle to obtain proof of liability insurance.[1] After returning to the police vehicle, he informed Williams that he did not have proof of insurance with him. At that point, Pereira–Munoz was visibly more nervous and would not make eye contact with Williams. Pereira–Munoz then stated that he had been stopped by Texas authorities at the Texas–Arkansas border, detained for two hours, and subjected to a vehicle search. He produced a Texas Department of Public Safety warning ticket for speeding at seventy-five miles per hour in a sixty-five mile per hour zone. The ticket had the word "searched" written on it. Pereira–Munoz also said something about a dog at the search site, giving an explanation that Williams was unable to understand. Although Williams had previously stopped persons who had produced similar Texas warning tickets, this was the first such ticket he had seen bearing a reference to a search.

Based upon his observations, Trooper Williams became suspicious and asked Pereira–Munoz for consent to search his car. Williams then discussed with Pereira–Munoz the Arkansas State Police consent and advice-of-rights forms. By this time, Trooper Clark had arrived on the scene. Although Pereira–Munoz refused to sign the written forms, he stated several times that the officers could "go ahead" with the search. The officers then proceeded to search the vehicle. While conducting the search, the officers discovered a trap door behind the back seat of the vehicle. After removing the trap door, they found one kilo of cocaine (an additional five kilos of cocaine were discovered during a later inventory search of the vehicle). Pereira–Munoz was then arrested. The entire encounter between Pereira–Munoz and the Arkansas officers lasted approximately thirty-five minutes.

Pereira–Munoz was subsequently indicted by a federal grand jury. The district court[2] denied Pereira–Munoz' motion to suppress the evidence seized, accepting the magistrate judge's[3] findings that the initial encounter between Pereira–Munoz and Trooper Williams and the resulting search of Pereira–Munoz' vehicle did not violate Pereira–Munoz' Fourth Amendment rights. Pereira–Munoz thereafter conditionally pled guilty, reserving his right to appeal the denial of his motion to suppress. The district court sentenced him to 151 months' imprisonment, with a five-year term of supervised release, and imposed a $250,000 fine and a $50 assessment.

## II.

Pereira–Munoz first argues that the initial stop by Trooper Williams was pretextual. He contends that the real reason for the traffic stop was because he is Hispanic. We review for clear error the district court's finding that the traffic stop was not pretextual. *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir.1994) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995).

---

1. Arkansas law requires that proof of insurance be carried when operating a motor vehicle. An officer not presented with proof of insurance is required to impound the license plate of the vehicle and issue a citation to the driver. *See* A.C.A. § 27–22–104 (Michie 1994).

2. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas.

3. The Honorable John F. Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas.

A pretextual traffic stop violates the Fourth Amendment. *United States v. Eldridge,* 984 F.2d 943, 947 (8th Cir.1993). It is well established, however, that any traffic violation, no matter how minor, provides a police officer with probable cause to stop the driver of the vehicle. *E.g. Bloomfield,* 40 F.3d at 915; *United States v. Barahona,* 990 F.2d 412, 416 (8th Cir.1993); *United States v. Cummins,* 920 F.2d 498, 500 (8th Cir.1990), *cert. denied,* 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991). To determine whether a stop was based on probable cause or was merely pretextual, we apply a "standard of 'objective reasonableness.'" *United States v. Miller,* 20 F.3d 926, 929 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 226, 130 L.Ed.2d 152 (1994). So long as the officer is doing nothing more than he is legally permitted and objectively authorized to do, his actual state of mind is irrelevant for purposes of determining the lawfulness of the stop. *Bloomfield,* 40 F.3d at 915; *Cummins,* 920 F.2d at 501 & n. 3. Pereira–Munoz does not dispute that he was speeding. Exceeding the speed limit is a legitimate basis for conducting a traffic stop. *United States v. Stapleton,* 10 F.3d 582, 583 (8th Cir.1993). No further inquiry is required. Accordingly, we find no error in the district court's finding that the stop was not pretextual.

Pereira–Munoz next argues that Williams' request for consent to search the vehicle exceeded the scope of a proper traffic stop. He contends that the search request resulted in an illegal detention, unsupported by a reasonable suspicion of criminal activity. Thus, he argues, his affirmative response to that request was tainted by the illegal detention. We review the district court's factual determinations concerning the detention for clear error; the district court's ultimate conclusion as to whether the Fourth Amendment was violated is a question of law subject to *de novo* review. *Bloomfield,* 40 F.3d at 918.

When an officer develops a reasonable, articulable suspicion of criminal activity during a traffic stop, "he has 'justification for a greater intrusion unrelated to the traffic offense.'" *Id.* (quoting *Cummins,* 920 F.2d at 502); *see Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Police officers are not required to ignore their reasonable suspicions. Rather, they are permitted "to graduate their responses to the demands of any particular situation." *United States v. Place,* 462 U.S. 696, 710 n. 10, 103 S.Ct. 2637, 2646 n. 10, 77 L.Ed.2d 110 (1983). "We assess the factors on which an officer based his claim of reasonable suspicion as a totality and in light of the officer's experience." *Bloomfield,* 40 F.3d at 918.

We conclude that Pereira–Munoz' responses to Trooper Williams' questions and the circumstances surrounding the stop provided Williams with a reasonable suspicion to broaden his inquiry. From the outset, Pereira–Munoz was very nervous and his hands were trembling. Upon being told that he was speeding, Pereira–Munoz disagreed with such vehemence that Williams feared that a confrontation might occur. Pereira–Munoz was also unable to provide proof of insurance as required under Arkansas law, following which his nervousness continued. He then informed Williams of being stopped earlier that day for speeding at the Texas–Arkansas border, detained for two hours, and subjected to a vehicle search. He also produced a warning ticket that had the word "searched" written on it, and he made some reference to a dog. It was at this point that Trooper Williams requested permission to search the car. Although any one of these factors, standing alone, may not have provided a basis for a finding of reasonable suspicion, "taken together as a whole, [they] provided ample justification for the limited additional request to" search Pereira–Munoz' vehicle. *See Miller,* 20 F.3d at 930 (additional request to see contents of wallet was proper); *United States v. Johnson,* 58 F.3d 356, 357 (8th Cir.1995) (inquiry into whether there was anything illegal in the car and request for consent to search was reasonable); *see also United States v. Harris,* 928 F.2d 1113, 1117 (11th Cir.1991) (momentary detention to re-

quest for consent to search vehicle was not unreasonable); *United States v. Turner,* 928 F.2d 956, 959 (10th Cir.) (single question about drugs or weapons in the car was reasonable), *cert. denied,* 502 U.S. 881, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991). "Because [Pereira–Munoz consented] to be[ing] searched while he was justifiably detained on reasonable suspicion, . . . the products of the search are admissible." *United States v. Delaney,* 52 F.3d 182, 187 (8th Cir.1995) (internal quotation omitted).[4]

### III.

■ Pereira–Munoz also challenges his sentence. He first contends that the district court erred in imposing a two-level increase to his offense level for obstruction of justice under U.S.S.G. § 3C1.1 (Nov.1993). The district court imposed the enhancement because of its determination that Pereira–Munoz provided a false resident alien identification card to a probation officer. We review the district court's factual determinations in support of a sentence enhancement for clear error, *United States v. Frieberger,* 28 F.3d 916, 918 (8th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 765, 130 L.Ed.2d 662 (1995), and its application of section 3C1.1 to those facts *de novo. United States v. St. James,* 38 F.3d 987, 988 (8th Cir.1994).

■ Under U.S.S.G. § 3C1.1, the sentencing court is required to increase a defendant's base offense level by two levels " 'if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution or sentencing of the instant offense.' " *St. James,* 38 F.3d at 987 (quoting § 3C1.1). The application notes following section 3C1.1 set forth a non-exhaustive list of conduct that may provide a basis for enhancement. An enhancement is warranted when the defendant "provid[es] materially false information to a probation officer in respect to a presentence or other investi-

gation for the court[.]" *Id.* at 988; U.S.S.G. § 3C1.1, comment. (n. 3(h)); *see also United States v. Thompson,* 972 F.2d 201, 204 (8th Cir.1992). A defendant's use of a false identity is a material fact. *St. James,* 38 F.3d at 988.

■ At sentencing, the government presented fingerprint and other evidence indicating that Pereira–Munoz was not actually Gonzalo Pereira–Munoz, the person to whom the resident alien card had originally been issued. This evidence was corroborated by the testimony of several law enforcement officials. Based on this evidence, the district court adopted the conclusion in the presentence report (PSR) that Pereira–Munoz had provided materially false information to a probation officer in respect to a presentence investigation. Pereira–Munoz presented no evidence to the contrary. Accordingly, we conclude that the district court did not err in finding that Pereira–Munoz submitted false identification.

Pereira–Munoz next argues that his failure to reveal his true identity did not impede investigation of the offense or the sentencing process. The district court concluded, however, that Pereira–Munoz' failure to provide a truthful identity hampered preparation of the PSR and precluded a determination as to whether he had a criminal history. Indeed, Pereira–Munoz' true identity is not yet known. The district court's conclusion was not clearly erroneous and adequately supports a finding of obstruction of justice. *See St. James,* 38 F.3d at 988; *Thompson,* 972 F.2d at 204; *United States v. Patterson,* 890 F.2d 69, 72 (8th Cir.1989). Moreover, "[e]ven if [Pereira–Munoz] did not succeed in actually obstructing the administration of justice, his use of [an] alias[ ] constituted attempted obstruction, warranting a § 3C1.1 enhancement." *United States v. Yerks,* 918 F.2d 1371, 1375 (8th Cir.1990).

---

4. Pereira–Munoz argues only that his subsequent consent to the search of his vehicle was tainted by an illegal detention. Although he argued to

the district court that his consent was also involuntary, he has abandoned that contention on appeal, and we therefore do not consider it.

Pereira–Munoz contends that the sentence enhancement violates his Fifth Amendment right against self-incrimination. We disagree. Pereira–Munoz was not penalized for exercising his right to remain silent. Rather, he was penalized because he chose to relinquish that right by providing false identification. *See United States v. Lawrence,* 918 F.2d 68, 72 (8th Cir.1990) (right waived where defendant volunteered information), *cert. denied,* 499 U.S. 941, 111 S.Ct. 1399, 113 L.Ed.2d 455 (1991). Accordingly, we reject this contention.

Finally, Pereira–Munoz argues that he was improperly sentenced on the basis of his alienage. In support of this contention, he cites our decision in *United States v. Onwuemene,* 933 F.2d 650 (8th Cir.1991). In *Onwuemene,* we held that consideration of an alien's status at sentencing "constitutes both an incorrect application of the guidelines and a violation of law[ ]" under 18 U.S.C. § 3742. *Id.* at 651. Because the district court in that case expressly made reference to Onwuemene's alien status as a factor in imposing a sentence at the top of the sentencing range, we vacated the sentence and remanded for resentencing. *Id.* at 652. Here, unlike in *Onwuemene,* the alleged improper references to Pereira–Munoz' alienage were made by the Assistant United States Attorney, not by the district court. Assuming that the statements were improper under *Onwuemene,* we decline to impute them to the district court or to find that they formed a basis for its sentencing decision.

The conviction and sentence are affirmed.