77 F.3d 486
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES of America, Plaintiff-Appellee,
v.
Adan Oscar BARBERENA-JIMENEZ, Jr., Defendant-Appellant.
 No. 95-3202.
 United States Court of Appeals, Eighth Circuit.
 Submitted: January 9, 1996.
Filed: February 28, 1996.
 
 Before MAGILL, REAVLEY* and HANSEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Adan Oscar Barberena-Jimenez, Jr. (Barbarena) conditionally pled guilty to possession with intent to distribute 25.97 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). He reserved the right to appeal the district court's[1] denial of his motion to suppress. We affirm.
 
 I.
 
 2
 Barberena, driving a U-Haul alone, was stopped by a state trooper on October 23, 1994 on Interstate 40 in Arkansas. The reason for the stop was Barberena's erratic driving; he was swerving and had crossed over the solid white line separating the shoulder from the freeway, the "fog line," several times. The trooper asked for Barberena's driver's license and the rental agreement, and requested Barberena to accompany him to the patrol car. Once inside the patrol car, the trooper ran a check of Barberena's license and asked Barberena a few questions.
 
 
 3
 During their discussions, Barberena informed the trooper that he had rented the U-Haul in Dallas and was traveling to New York. The rental agreement which he had produced, however, indicated that someone else had rented the U-Haul in San Antonio and the destination was Boston. The trooper also detected extreme anxiety and nervousness in Barberena. Suspecting something amiss, the trooper requested consent to search the contents of the U-Haul. Barberena consented.
 
 
 4
 With the cooperation of another trooper, the police discovered approximately 26 kilograms of cocaine in their search of the U-Haul. Barberena was placed under arrest and read his Miranda warnings. After the warnings were read, Barberena informed the troopers he was aware of the presence of cocaine; he had been paid $6,000 to deliver the cocaine to an unknown person in New York; and he agreed to assist the police in making a controlled delivery of the cocaine. When he reached the police station, he was again informed of his rights this time in Spanish. Initially, Barberena waived those rights and answered questions about his background. As the interview progressed, he requested the presence of an attorney, and all questioning by the police ceased.
 
 
 5
 The next morning, the arresting trooper transported Barberena to federal court for his initial appearance. The trooper, following their discussions the day before, inquired whether Barberena had been successful in reaching his ill wife. On the heels of his answer to the trooper, Barberena provided the trooper with more details concerning the crime.
 
 
 6
 Barberena moved to suppress the evidence found during the search of his truck, and his statements made when he was being transported to federal court. Following a hearing, the magistrate court[2] denied the motion. The district court adopted the magistrate court's findings in its entirety. Prior to trial Barberena conditionally pleaded guilty to possession with intent to distribute cocaine, preserving his right to appeal the district court's suppression rulings.
 
 II.
 
 7
 Barberena asserts that the evidence should be suppressed because the stop was pretextual, the questioning of the troopers exceeded the scope authorized by the search, and the trooper failed to warn him of his rights prior to seeking consent to search the U-Haul. We will address each in turn.
 
 
 8
 A. Grounds for the stop.
 
 
 9
 Barberena contends the stop was merely pretextual. We review for clear error the district court's finding that the traffic stop was not pretextual. United States v. Pereira-Munoz, 59 F.3d 788, 790 (8th Cir.1995). A pretextual stop violates the Fourth Amendment. Id. at 791. "It is well established, however, that any traffic violation, no matter how minor, provides an officer with probable cause to stop the driver of the car." Id.; United States v. Johnson, 58 F.3d 356, 357 (8th Cir.), cert. denied, 116 S.Ct. 348 (1995); United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir.1994) (en banc), cert. denied, 115 S.Ct. 1970 (1995). "If the officer is legally authorized to stop the driver, any additional 'underlying intent or motivation' does not invalidate the stop." Bloomfield, 40 F.3d at 915 (quoting United States v. Cummins, 920 F.2d 498, 501 (8th Cir.1990), cert. denied, 112 S.Ct. 428 (1991)).
 
 
 10
 The evidence indicates that Barberena did not maintain his automobile in a single lane of traffic. This constitutes an offense in Arkansas. Ark.Code. Ann. § 27-51-302 (Michie 1994) ("A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that movement can be made with safety ..."). The district court was not clearly erroneous in finding the stop was not pretextual.
 
 
 11
 B. Questioning after the stop.
 
 
 12
 Barberena argues the trooper exceeded the scope of his authority to question him when the trooper determined Barberena was not intoxicated. We review the district court's factual determinations for clear error, and the district court's ultimate conclusion as to whether the Fourth Amendment was violated d e novo. Pereira-Munoz, 59 F.3d at 791.
 
 
 13
 Once a trooper has a right to stop a driver, the trooper may "conduct an investigation 'reasonably related in scope to the circumstances that justified the interference in the first place.' " Bloomfield, 40 F.3d at 915 (quoting Cummins, 920 F.2d at 502). "This reasonable investigation includes asking for the driver's license and registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose." Id. This also includes asking why Barberena was swerving outside of the single lane of traffic. "Moreover, 'if the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.' " Johnson, 58 F.3d at 357 (quoting United States v. Barahona, 990 F.2d 412, 416 (8th Cir.1993)).
 
 
 14
 After pulling the vehicle over, the trooper approached the cab of the U-Haul. Barberena produced a valid Mexican driver's license and the U-Haul rental agreement. The trooper asked a few questions and requested Barberena accompany him to the patrol car. After observing Barberena walk to the patrol car and conversing with him, the trooper determined Barberena was not intoxicated. However, based upon Barberena's answers to his questions the trooper became suspicious. Barberena was not listed on the rental agreement as the renter of the vehicle or as an additional driver of the vehicle. The truck had been rented in San Antonio; yet, Barberena told the trooper he had rented the truck in Dallas. Finally, the rental agreement indicated the final destination was Boston, but Barberena had informed the trooper his final destination was New York. The trooper also testified that Barberena appeared nervous (hyperventilating and visibly shaking) throughout the exchange.
 
 
 15
 We conclude that Barberena's responses to the trooper's questions and the circumstances surrounding the stop provided the trooper with a reasonable suspicion to broaden his inquiry. The stop was of a short duration. Barberena's behavior, the fact he was not listed as the renter or as an additional driver on the rental agreement, and his inconsistent statements concerning his origination point or destination provided a reasonable basis for the trooper's suspicion that there may be illegal contraband inside the vehicle. These factors taken as a whole provide a basis for a finding of reasonable suspicion, amply justifying the trooper's request to search the vehicle. Pereira-Munoz, 59 F.3d at 791; Johnson, 58 F.3d at 358.
 
 
 16
 C. Was consent freely given?
 
 
 17
 Barberena asserts that he was under de facto arrest when he was asked to consent to search his truck, and that failure of the trooper to issue the Mirand a warnings to Barberena prior to his consent to search is fatal to the government's case. The question of whether the detention of Barberena amounted to an arrest is reviewed de novo; we review the district court's findings of fact for clear error. Bloomfield, 40 F.3d at 916-18.
 
 
 18
 "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 100 S.Ct. 1870, 1877 (1980). "The subjective intent of the seizing officer is irrelevant if not communicated to the suspect." Bloomfield, 40 F.3d at 916; Mendenhall, 100 S.Ct. at 1877, n. 6. "No seizure occurs when a police officer simply questions an individual or asks to see his identification, so long as the officer does not send a message that the individual must comply with his request." United States v. McManus, 70 F.3d 990, 992 (8th Cir.1995) (citing Florida v. Bostick, 111 S.Ct. 2382, 2386 (1991)). The length of detention and the efforts of police to conduct their investigation quickly and unintrusively are factors in determining whether a decision is reasonable in the context of an investigative stop. Bloomfield, 40 F.3d at 916. Other factors include transporting a suspect to another location and delays caused by the suspect. Id, at 916-917.
 
 
 19
 The district court found that there was not a passage of time or other attendant circumstances that would cause the court to believe the encounter escalated to a de facto arrest. We agree that Barberena's detention was very brief, and the trooper's questions were unintrusive. Therefore, Barberena was not under de facto arrest and Miranda warnings were not required prior to the trooper obtaining consent to search.
 
 III.
 
 20
 Finally, Barberena argues his statements to the arresting trooper made while in transit to federal court for his initial appearance should have been supressed. The district court found that the trooper initiated a conversation about whether Barberena had been able to contact his wife, and that Barberena initiated the conversation concerning the facts surrounding his case. We review these findings under a clearly erroneous standard. United States v. Risnes, 912 F.2d 957, 959 (8th Cir.1990).
 
 
 21
 Basically, Barberena's argument rests on an assumption that he was somehow induced to talk about the crime when the trooper inquired about whether Barberena had been able to contact his wife. Barberena argues that this question was so inflammatory, it induced him to talk about his situation and his crime.
 
 
 22
 "[A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with police." Edwards v. Arizona, 101 S.Ct. 1880, 1885 (1981) (emphasis added). The questions by police concerning whether Barberena had reached his wife the night before were not so inflammatory that it caused him to discuss the facts of the case. The district court was not clearly erroneous in finding that Barberena initiated the conversation concerning the crime. The fact that the trooper and Barberena discussed an unrelated subject does not alter the fact that Barberena initiated the conversation about the offense. See United States v. Risnes, 912 F.2d 957 (8th Cir.1990) (the district court's findings were not clearly erroneous where the court admitted statements made subsequent to the officers' and defendant's discussion about hunting when defendant later initiated conversation concerning crime).
 
 IV.
 
 23
 The district court did not err in overruling Barberena-Jimenez's suppression motion.
 
 
 24
 Affirmed.
 
 
 
 *
 The HONORABLE THOMAS M. REAVLEY, United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 [1]
 The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 The Honorable H. David Young, United States Magistrate Judge for the Eastern District of Arkansas