# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2905

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri |
| Marcus Deangelo Jones, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: March 13, 2001
Filed: June 25, 2001 (Corrected July 25, 2001)

_____

Before MORRIS SHEPPARD ARNOLD and HEANEY, Circuit Judges, and
TUNHEIM,[1] District Judge.

_____

TUNHEIM, District Judge.

Marcus Deangelo Jones was found guilty by a jury on April 26, 2000, of four counts of distribution and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846. On appeal Jones

_____

[1] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

argues that the district court[2] erred in denying his motion to suppress and erred in admitting certain evidence at trial. Jones also challenges the sufficiency of the evidence as to the conspiracy conviction. We affirm.

## FACTUAL BACKGROUND

In the summer of 1999, the Columbia Police Department was conducting an investigation of Jones for possible involvement in illegal narcotics activity. The investigation included at least four arranged purchases of crack cocaine by undercover police detective Candy Cornman. In her undercover role, Detective Cornman had a number of meetings and telephone conversations with Jones. Each of the meetings was recorded on audio tape and all but one videotaped. After each meeting with Jones during which she bought crack cocaine, a field test and chemical analysis was conducted and the substance sent to the laboratory for further testing. The result of the investigation was the arrest, subsequent trial and conviction of Jones on distribution, possession, and conspiracy charges.

On July 16, 1999, Detective Cornman spoke with Jones by phone and arranged to purchase 1/8 ounce of crack cocaine from him. Later that day, she met Jones in a supermarket parking lot in Columbia, Missouri. After Cornman arrived, Jones drove up to her in a gray four-door Chevrolet Celebrity with a Missouri license plate, 140-KHL. Jones sold Cornman 1/8 ounce of crack cocaine for $200. At that time, the two discussed future transactions and Jones quoted Cornman a price list for different amounts of crack cocaine.

On July 20, 1999, Cornman again made arrangements to buy crack cocaine from Jones. This time the two met in the parking lot of a different Columbia supermarket.

---

[2] The Honorable Scott O. Wright, Senior Judge for the United States District Court, Western District of Missouri.

Jones again arrived in the Chevrolet Celebrity, but this time with four other people. He was seated in the front passenger seat and motioned Cornman over to the vehicle. Jones proceeded to sell Cornman ¼ ounce of crack cocaine for $275. After the transaction was completed, Jones got back into the vehicle and was driven to a different area of the parking lot where another individual appeared to be waiting for him. That person got out of his vehicle and approached Jones's vehicle. Cornman witnessed what appeared to be a transaction between the two.

On July 30, 1999, Cornman again communicated with Jones and this time he agreed to sell her ½ ounce of crack cocaine. When Jones arrived at the agreed upon location, he was driving a Chevrolet Monte Carlo with the same license plate as the one on the Chevrolet Celebrity, which Jones had used in the previous two sales. Cornman purchased ½ ounce of crack cocaine from Jones for $560. After the transaction, Cornman again witnessed Jones approach the same vehicle that he had approached after the July 20, 1999 transaction.

Earlier in the day on July 30, 1999, Sergeant Brian Piester, who was in charge of the Columbia Narcotics Unit, told Officer Christopher Kelley that an undercover detective would be meeting an individual near Officer Kelley's patrol area. Sgt. Piester told Officer Kelley that he would radio Kelley after the meeting and that Kelley should follow the vehicle and attempt to find probable cause to stop the vehicle and identify the driver. Shortly before 5:30 p.m. that evening, Kelley received a radio call from Piester, telling him that Jones's vehicle was leaving the meeting with Cornman. Officer Kelley followed the car and ran the license plate number through his on-board computer. The computer search revealed that the license plate was registered to a four-door, rather than two-door Chevrolet. Concluding that the vehicle was improperly registered, Kelley stopped Jones. Officer Kelley asked Jones for identification and Jones gave him a Missouri driver's license that identified him as "Marcus D. Jones." After writing down the identification information, Kelley issued Jones a warning for improper registration and for not producing proof of insurance. The identification

information obtained by Kelley confirmed that defendant had used different names at different times, a fact that the on-going narcotics investigation apparently had not yet confirmed.

On August 18, 1999, Detective Cornman again met Jones in a supermarket parking lot, this time to purchase one ounce of crack cocaine. Jones arrived in a dark blue Nissan Maxima with another person, who Jones introduced as "Lil' Mex." Cornman had brought a scale with her to ensure that she received the proper amount of cocaine. When she weighed the cocaine, she found that it weighed under an ounce and paid Jones $700 rather than the $1200 that they had earlier agreed upon. During the transaction, "Lil' Mex" handed the crack cocaine to Cornman across the passenger side of the vehicle and also told Cornman during the transaction that the weight of the crack was correct. "Lil' Mex" later said to Jones, after Cornman had discovered the weight of the crack was less than one ounce, "Just knock some off. Let's go."

Cornman talked to Jones again on September 9, 1999, to set up another crack purchase. During their conversation, Jones told Cornman that he wanted to know who the two knew in common because he had heard that secret indictments were going to come down. The next day the two met and Jones sold Cornman crack cocaine for $1000.

Jones was arrested at an Amoco Quick Store in Columbia, Missouri on December 21, 1999, by Officer Benjamin White. Jones was not immediately read his Miranda[3] rights, but was transported to the police station in a squad car. While riding in the police car, the officers testified that Jones was very talkative and asked a number of questions. During the ride to the police station, and before the officers read him his Miranda rights, Jones explained to the officers his use of two different names. He told the officers that he was unable to obtain a driver's license after being released from

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

prison in Tennessee, so he used his mother's name, "Jones," from his Tennessee birth certificate. Jones also explained that his prior felony convictions were under the name "Lee" in Tennessee. Officer White testified that Jones never requested an attorney and did not ask that the questioning cease. None of the statements obtained on the ride to the police station were used at trial.

Upon arriving at the police station, Officer White testified that Jones was processed and booked and read his <u>Miranda</u> rights. Officer White stated that he recited Jones his <u>Miranda</u> rights from memory rather than reading them from a card. White testified that Jones then agreed to answer some questions and told the police that he had used the name "Marcus Jones" to purchase a handgun from a pawn shop and that he had used the last names "Jones" and "Lee." He also told the police that he had changed his name from "Lee" to "Jones" after getting out of prison, that he had applied for and received a gun permit, but that his gun had been seized by the police in an earlier incident. Jones admitted that he knew that he wasn't supposed to have a gun, but that "the handgun was the least of his worries." Defendant claims that he was not read his <u>Miranda</u> rights until his questioning at the police station was almost completed.

## PROCEDURAL HISTORY

A federal grand jury returned a six count indictment on November 19, 1999, charging Jones with four counts of distribution of cocaine base and one count each of attempt to distribute cocaine base and conspiracy to distribute at least 50 grams of cocaine base. Defendant entered a not guilty plea on December 23, 1999. A superseding indictment was returned on January 21, 2000, realleging the same six counts, and adding one count for carrying a firearm in relation to a controlled substance in violation of 18 U.S.C. § 924(c).

Jones filed motions to suppress evidence and statements. On April 17, 2000, a suppression hearing was held before a magistrate judge. Jones claimed that the July 30,

1999 stop violated his Fourth Amendment Rights.  He also moved to suppress the statements he made to police during his ride to the police station as well as the statements made at the police station on December 21, 1999, because he had not been given his <u>Miranda</u> rights.  The district court denied both motions and the case proceeded to trial.

During the trial, the district court admitted over defendant's objection, a video tape of the July 20, 1999, transaction between Cornman and Jones.  The video also showed Jones's car driving to another vehicle in the parking lot and making some kind of exchange with the person in that vehicle.  Officer Cornman was also permitted to testify at trial, over defendant's objection, that Jones told her that he was concerned about secret indictments that had recently come down.

On April 26, 2000, a jury found Jones guilty on four counts of distributing cocaine base and on one count of conspiracy to distribute cocaine base.  Jones was found not guilty of attempt to distribute cocaine base.[4]  The district court sentenced Jones to 327 months in prison for counts one, three, and six of the indictment, and to 120 months for counts four and five, the sentences to run concurrently.  Jones filed this timely appeal.

## DISCUSSION

### I.    Motion to Suppress

Where a court denies a motion to suppress statements, we review its factfinding under a clearly erroneous standard.  <u>United States v. McMurray</u>, 34 F.3d 1405, 1409 (8th Cir. 1994).  However, we review the court's application of law to those facts de

---

[4] Count VII of the indictment, carrying and using a firearm during a controlled substance offense, was dismissed by the district court on Jones's motion during trial.

novo. <u>Id</u>. We will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear that a mistake was made. <u>United States v. Bieri</u>, 21 F.3d 811, 814 (8th Cir. 1994).

## A. Statements Made to Police

Jones argues that his statements made to police officers after his arrest on December 21, 1999 should have been suppressed because he was not read his <u>Miranda</u> rights. Jones also contends that at the time of his arrest he was placed in a police-dominated atmosphere and his liberty was restrained, triggering the need for a <u>Miranda</u> warning. We find that the district court did not err in denying Jones's motion to suppress the statements.

Jones sought to suppress two separate statements he made on December 21, 1999. The first statement, made after Jones was arrested while he was in the police car on the way to the station, was not used during trial. Because this statement was not used at trial, the Court need not address whether Jones's motion was properly denied. <u>United States v. Alvarado-Delgado</u>, 98 F.3d 492, 494 (9th Cir. 1996) (noting that defendant's initial statements were not admitted at trial and the court therefore need not consider whether the pre-<u>Miranda</u> statements were admissible); <u>Reynolds v. A.L. Lockhart</u>, 497 F.2d 314, 315 (8th Cir. 1974) (explaining that none of petitioner's incriminating statements were admitted at trial and the exclusionary rule therefore has no application).

Jones made another statement after he was processed and booked at the police station. He claims that no <u>Miranda</u> warning was given to him until after he made incriminating statements at the police station. Officer White testified that he informed Jones of his <u>Miranda</u> rights at the time of the booking, reciting them from memory. The

district court found that Jones had been given his <u>Miranda</u> rights by Officer White at the police station and then knowingly and voluntarily waived those rights.

The question before this Court is essentially one of credibility: whether the testimony of Officer White or the testimony of Jones was more credible. Credibility determinations are best left to the sound discretion of the trial judge. <u>United States v. E.R.B.</u>, 86 F.3d 129, 130 (8th Cir. 1996). There is nothing in the record before this Court to call into question the credibility determination made by the district court that Officer White recited <u>Miranda</u> rights to Jones at the time of booking. Accordingly, the district court's decision to deny Jones's motion to suppress statements made to the police after his arrest is affirmed.[5] <u>United States v. Sturgis</u>, 238 F.3d 956, 958 (8th Cir. 2001) (affirming district court decision based on credibility determination); <u>United States v. Moss</u>, 138 F.3d 742, 744 (8th Cir. 1998) (affirming district court drug quantity determination based on credibility determination); <u>United States v. Lank</u>, 108 F.3d 860, 862 (8th Cir. 1997) (stating that court would not disturb district court credibility finding).

## B.    Evidence Obtained from Traffic Stop

Appellant also argues that the district court erred in refusing to suppress identification information obtained by Officer Kelley after a traffic stop of appellant's car on July 30, 1999. Appellant argues that the traffic stop was unlawful because it was pretextual and not based upon reasonable articulable suspicion of criminal activity.

---

[5] The Court also notes that there is no evidence in the record to indicate that there was any coercion on the part of the police officers. Even if this Court were to have found that defendant was not read his <u>Miranda</u> rights, the absence of any coercion would still result in the affirmance of the district court's decision to deny defendant's motion to suppress. <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986); <u>United States v. Kime</u>, 99 F.3d 870, 880 (8th Cir. 1996).

While a pretexual traffic stop violates the Fourth Amendment, see United States v. Eldrige, 984 F.2d 943, 947 (8th Cir. 1993), this Court has held on numerous occasions that any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver. United States v. Periera-Munoz, 59 F.3d 788, 791 (8th Cir. 1995); United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993). To determine whether a traffic stop was based on probable cause or was merely pretextual, an "objective reasonableness" standard is applied. United States v. Miller, 20 F.3d 926, 929 (8th Cir. 1994). Once a car is lawfully stopped, the police may request the driver's license and registration. United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994) (a reasonable traffic stop includes asking for a license and registration).

In this case, Officer Kelley ran defendant's license plate information through his on-board computer and discovered that the plates were registered to a four-door car, rather than a two-door car. Officer Kelley concluded that defendant was operating an improperly registered vehicle and then stopped the vehicle. Officer Kelley next asked Jones for identification and was given a Missouri driver's license that identified defendant as "Marcus D. Jones." After writing down the identification information, Officer Kelley issued Jones a warning for improper registration and for not producing proof of insurance.

Officer Kelley had evidence of a traffic violation and his decision to stop Jones and ask for identification was therefore objectively reasonable. The fact that Officer Kelley had previously been told by Sgt. Piester that an undercover detective was going to meet with an individual near Officer Kelley's patrol area, and that after the meeting Kelley should follow the vehicle and attempt to find probable cause to stop the vehicle and identify the driver is irrelevant. Courts are not to consider the motive for a stop as long as the reason for the stop is valid. Whren v. United States, 517 U.S. 806, 809 (1996); Periera-Munoz, 59 F.3d at 791 ("if the officer is doing that which he is legally permitted to do and objectively authorized to do, his state of mind is irrelevant for

-9-

purposes of determining the lawfulness of the stop"). Here, because the reason for the stop was valid, the district court decision to deny Jones's motion to suppress the identification information obtained by Officer Kelley was not clearly erroneous.

## II.    Evidentiary Issues

We review a decision to admit evidence over a party's objection under the abuse of discretion standard. McMurray, 34 F.3d at 1411; United States v. Whitfield, 31 F.3d 747, 749 (8th Cir. 1994). The district court is given broad discretion in determining relevancy and admissibility of evidence. United States v. Hollister, 746 F.2d 420, 422 (8th Cir. 1984). That discretion is particularly broad in a conspiracy trial. United States v. Davis, 882 F.2d 1334, 1343 (8th Cir. 1989).

### A.    Admission of Video Tape

During the trial, the jury was shown a video tape of an alleged cocaine sale by Jones to Officer Cornman. During the trial, Officer Cornman was permitted to testify as to what she witnessed after the transaction was completed. She testified that Jones drove to a different area in the parking lot where another person was waiting. She then testified that the two appeared to exchange some item. After Officer Cornman testified to these events, the jury was shown the corresponding video tape. Jones argues that the district court improperly admitted the evidence of the video tape because the charged crime had been completed. Jones contends that admitting the remainder of the video tape, showing the additional transaction, was prejudicial and should have been excluded as inadmissible character evidence pursuant to Fed. R. Evid. 404(b).

Jones, however, misconstrues the nature of the evidence and the purpose for its admission. Jones was charged with conspiracy to distribute cocaine base. The testimony of Officer Cornman, along with the second portion of the video tape, were offered as direct evidence of the conspiracy. The evidence was not offered as improper

character evidence pursuant to Fed. R. Evid. 404(b), but as direct evidence. A 404(b) analysis is therefore not appropriate. United States v. Jones, 880 F.2d 55, 59 (8th Cir. 1989) (explaining that evidence of drug-related activity was evidence of the very conspiracy charged against the named defendants and was thus outside the purview of prior bad acts); United States v. Aranda, 963 F.2d 211, 213-14 (8th Cir. 1992) ("evidence of acts committed by the defendant . . . during the time frame of the conspiracy and in furtherance of it . . . is not [evidence] of 'other crimes,' but rather is evidence of the very crime charged"). Because the video was offered as direct evidence of the conspiracy, the district court's decision to admit the evidence was not an abuse of discretion.

## B. Admission of Statements Regarding Secret Indictments

Jones also contends that a video tape shown to the jury in which "secret indictments" were discussed was not relevant to the pending charges. He argues that the video tape was prejudicial and should have been excluded pursuant to Fed. R. Evid. 404(b). Jones makes the same argument with respect to the testimony of Officer Cornman, in which she stated that Jones had told her that he was concerned about "secret indictments" coming down.

The government argues that the specific grounds for the objection to this evidence were not made at trial, and that the evidentiary ruling is therefore entitled to plain error review. Having reviewed the trial transcript, the Court finds that defense counsel never made clear the grounds for the objection to this evidence. As such, plain error review is appropriate in this case. United States v. Swanson, 9 F.3d 1354, 1357 (8th Cir. 1993); United States v. Helmel, 769 F.2d 1306, 1316-17 (8th Cir. 1985). Under the plain error standard, we will reverse the district court only if the error prejudices the substantial rights of the defendant, and would result in a miscarriage of justice. Id. The Court cannot find that any such error occurred in this case.

Throughout the course of the entire trial, "secret indictments" were only mentioned twice: once by Jones, during a tape recorded phone call; and once by Officer Cornman in testifying about the call. These two minor references did not prejudice the substantial rights of Jones, and if error at all, were harmless.

## III.    Sufficiency of Evidence for Conspiracy Conviction

Evidence is sufficient to support a verdict if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "We view the evidence in a light most favorable to the verdict, giving the verdict the benefit of all reasonable inferences, and [we] will reverse only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime." United States v. Sandifer, 188 F.3d 992, 995 (8th Cir. 1999).

In order to be convicted of conspiracy, a defendant must be shown to have knowingly entered into an agreement with at least one other person to violate the law. United States v. Holloway, 128 F.3d 1254, 1257 (8th Cir. 1997); United States v. Agofsky, 20 F.3d 866, 870 (8th Cir. 1994). A defendant challenging the sufficiency of a conspiracy conviction has a heavy burden of proof because the crime often rests on indirect or circumstantial evidence. United States v. Hulse, 198 F.3d 665, 668 (8th Cir. 1999).

Jones challenges the sufficiency of the conspiracy conviction because he contends that there was no showing that he acted with or under the direction of another person. Jones argues that simply because he was at the scene of illegal activity with others is not enough to  show a conspiracy.

Viewing the evidence in the light most favorable to the verdict, Jones's conspiracy conviction must be affirmed. The evidence adduced at trial shows that after

a narcotics transaction with Officer Cornman on July 16, 1999, Jones, along with others in the car, proceeded to a separate area of the parking lot where another transaction occurred. The jury could have determined from this evidence that Jones was working in conjunction with those in the vehicle to sell narcotics.

Moreover, testimony at trial showed that on August 18, 1999, Jones and "Lil' Mex" completed another purported narcotics transaction with Officer Cornman. During that transaction, "Lil' Mex" was introduced to Officer Cornman and he participated in the transaction by handing the substance to Cornman through the car window. "Lil' Mex" also told Cornman that the proper amount was in the package, and then after it was found to be short, said "Just knock some off. Let's go." Jones also indicated to Cornman during a later conversation that he had dealt with "Lil' Mex" before. The jury could reasonably conclude from this evidence that Jones was involved in a conspiracy with "Lil' Mex."

The evidence was therefore sufficient for a jury to conclude that Jones was guilty of a conspiracy to distribute crack cocaine.

For the foregoing reasons, the judgment of the trial court is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.