United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-1930
_____

United States of America,     *

      Plaintiff - Appellee,     *

     v.     *

Carlos Williams,     *

      Defendant - Appellant.     *

*   Appeal from the United States
*   District Court for the
*   Northern District of Iowa.

_____

Submitted: October 21, 1997
Filed: March 20, 1998
_____

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and HANSEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

After conditionally pleading guilty to possession with intent to distribute crack cocaine, see 21 U.S.C. § 841(a)(1), Carlos Williams appeals the denial of his motion to suppress narcotics seized during a warrantless search. Reviewing the district court's[1] Fourth Amendment conclusions of law *de novo*, see United States v. Martinez,

---

[1] The HONORABLE MICHAEL J. MELLOY, Chief Judge of the United States District Court for the Northern District of Iowa, adopting the Report and Recommendation of the HONORABLE JOHN A. JARVEY, United States Magistrate Judge for the Northern District of Iowa.

78 F.3d 399, 401 (8th Cir. 1996), we conclude the police had reasonable suspicion of drug trafficking to conduct an investigative stop of the car in which Williams was a passenger, and that they acquired probable cause to arrest Williams and seize the cocaine during a protective pat-down search. We therefore affirm.

At the suppression hearing, Officer Dominic Wibe testified that he served as spotter for the Cedar Rapids Police Department's street interdiction detail on the evening of June 20, 1995. Using high-powered binoculars from an elevated position about seventy-five yards away, Officer Wibe observed the front of the CIO Tavern, located in an area where citizens had complained of drug trafficking. At 9:15 p.m., Wibe saw Charles Cook and Williams park a car in front of the tavern and go inside. Minutes later, Perry Harris and George Ratliff arrived in a second car and parked in front of the tavern. Harris entered the bar and soon returned to speak with Ratliff, who was now standing outside the car. Ratliff handed Harris money, and Harris re-entered the tavern. Cook soon exited the tavern, spoke to Ratliff, and went to his car. Williams followed Cook out of the tavern and approached Ratliff, and Harris came out and joined them. Williams took some items from his right front pants pocket and held them out to Ratliff, who selected from the offering. Williams returned the remaining items to his pocket, while Ratliff and Harris looked at what Ratliff had selected. All four then drove away in the two vehicles.

Officer Wibe, an experienced narcotics officer who had once attempted to purchase narcotics from Williams while working under cover, testified that he was "100 percent certain" that this ten-minute sequence of events was an illegal drug transaction. Wibe inferred that Harris had acted as intermediary because Ratliff did not know Williams and Cook well enough to buy from them directly, that Harris had delivered Ratliff's money to Williams or Cook in the tavern, and that Williams had completed the exchange by offering Ratliff a choice of the illegal drugs Williams was carrying in his pants pocket. Wibe immediately radioed fellow officers that he had just observed a drug transaction and that the passenger in Cook's car was likely carrying

narcotics in his pants pocket. Wibe provided license plate numbers, described the cars and the clothing worn by their occupants, and directed that the two cars be stopped.

Officer Scott Syverson, the other government witness at the suppression hearing, testified that he and Officer McDaniel received Wibe's radio transmission and stopped the car driven by Cook. Syverson approached passenger Williams and reviewed the identification he provided. Syverson told Williams the reason for the stop and asked him to exit the car. Syverson radioed Wibe, who confirmed that Williams was the right person to be questioned about the events Wibe had observed. Syverson then patted Williams down for weapons. When Syverson felt a bulge in the pants pocket where Wibe said narcotics would likely be found, Syverson reached in that pocket, removed crack cocaine, powder cocaine, and marijuana from the pocket, and arrested Williams. This prosecution followed.

On appeal, Williams first argues that Officer Wibe lacked probable cause to order the stop of the car in which Williams was riding because Wibe could not see well enough -- by street light, from a distance, and through binoculars -- to determine that Williams, Ratliff, Harris, and Cook were engaged in an illegal drug transaction. However, the issue at this point in the scenario is whether Wibe saw enough to form a reasonable, articulable suspicion that criminal activity was afoot, thereby justifying an investigative stop of the car. See Terry v. Ohio, 392 U.S. 1, 25-31 (1968). Wibe's decision to order an investigative stop was unquestionably justified. Wibe observed behavior consistent with his knowledge of illegal narcotics street sales outside a tavern in a suspected drug trafficking area, and the behavior involved Williams, whom Wibe had suspected of drug trafficking in the past. Although the interplay could have been innocent, Wibe had reasonable suspicion that both Williams and Ratliff left this scene with drugs in their possession, evidence of criminal activity that might be uncovered by a prompt investigative stop of the highly mobile participants. Officer Wibe violated no Fourth Amendment rights by directing an investigative stop of the two cars.

The scene now shifts to Officer Syverson's discovery of the incriminating narcotics in Williams's pants pocket. Syverson was of course entitled to rely on information provided by Officer Wibe in stopping the car in which Williams was riding. See United States v. Robinson, 119 F.3d 663, 666-67 (8th Cir. 1996); United States v. Riley, 927 F.2d 1045, 1048-49 (8th Cir. 1991). Once an investigative stop has been initiated, a police officer who has reason to believe that the person stopped may be armed and dangerous may conduct a pat-down search for weapons to protect officer safety. See Adams v. Williams, 407 U.S. 143, 146 (1972); United States v. Menard, 95 F.3d 9, 11 (8th Cir. 1996), and cases cited. In this case, Williams concedes that Officer Syverson's decision to conduct a pat-down search was reasonable.

Williams argues, however, that Officer Syverson exceeded the permissible scope of a pat-down search when he removed the bulge from Williams's pocket. We disagree. When an officer discovers contraband during the course of a legitimate Terry search, "the Fourth Amendment does not require its suppression." Michigan v. Long, 463 U.S. 1032, 1050 (1983). Typically, such discoveries are made when contraband comes into plain view of the officer conducting a protective search. But the principle is not limited to what can be seen. "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." Minnesota v. Dickerson, 113 S. Ct. 2130, 2137 (1993); see United States v. Craft, 30 F.3d 1044 (8th Cir. 1994); United States v. Hughes, 15 F.3d 798, 802 (8th Cir. 1994). Here, Williams argues that Syverson went too far because the incriminating nature of the bulge in Williams's pants pocket was not "immediately apparent." But that ignores the very basis for the Terry stop -- the fact that Officer Wibe had seen Williams put what Wibe reasonably believed to be illegal narcotics in that very pocket only minutes before the stop. Based upon the information Wibe had supplied, the reasonable suspicion that justified an investigative stop rose to probable cause when Officer Syverson felt the confirming bulge in Williams's pocket. See United States v. Rogers, 129 F.3d 76, 80 (2d Cir.

-4-

1997) (immediately apparent under <u>Dickerson</u> means "anytime in the course of a search conducted within the bounds of Terry"). Therefore, Syverson lawfully arrested Williams and removed the incriminating evidence from his pocket incident to that arrest, and Williams's motion to suppress was properly denied. <u>See</u> <u>United States v. Turpin</u>, 920 F.2d 1377, 1386 (8th Cir. 1990) (substantially contemporaneous search may precede arrest so long as probable cause to arrest existed before the search), <u>cert. denied</u>, 499 U.S. 953 (1991).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS EIGHTH CIRCUIT.