# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2389

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa |
| John W. Coleman, | * | |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: January 14, 2010
Filed: April 28, 2010

_____

Before MURPHY and BYE, Circuit Judges, and GOLDBERG,[1] Judge.

_____

GOLDBERG, Judge.

Defendant-Appellant John Coleman ("Coleman" or "defendant") was convicted of possession of cocaine and ecstasy with intent to distribute, possession of a firearm in furtherance of drug trafficking, and felon in possession of firearms and

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

ammunition. He appeals the district court's[2] ruling denying his motion to suppress and the judgments and sentences entered against him following a trial by jury. We affirm.

Coleman was arrested when officers of the Des Moines Police Department stopped a vehicle for an alleged traffic violation. Coleman was sitting in the front seat passenger side of the vehicle. During questioning, Coleman provided false information to the officers. He was removed from the car and arrested. A 9 millimeter magazine was discovered on Coleman. A loaded Ruger 9 millimeter handgun, cocaine and ecstasy tablets were discovered in the glove box in front of Coleman's seat. A loaded Taurus .40 caliber handgun and a loaded magazine were discovered behind Coleman's seat.

Coleman proceeded to trial and the jury rendered a guilty verdict on all four charged counts. Coleman was sentenced to a total of 300 months' imprisonment.

## II. Discussion

A. The stop of the vehicle in which the defendant was a passenger was lawful.

Coleman filed a motion to suppress, asserting that the vehicle stop was unlawful. The district court denied the motion, finding that although the officers did not have authority to stop the vehicle based on the citation issued for stopping in the traveled portion of a roadway, the officers had probable cause to stop the vehicle

---

[2]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

based on a double-parking violation. The district court also upheld the vehicle stop based on reasonable suspicion that the occupants were involved in a drug transaction.

On appeal, Coleman argues that the district court erred in denying his motion because his arrest and the evidence against him were the products of an illegal vehicle stop. This Court reviews the factual findings underlying a district court's ruling on a motion to suppress for clear error and its conclusions of law de novo. United States v. Luken, 560 F.3d 741, 744 (8th Cir. 2009).

This Court has held numerous times that "*any* traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001) (emphasis original); see also United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995); United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994). Here, the arresting officer believed he saw two traffic violations before initiating the stop: 1) violation of state law prohibiting stopping in the traveled portion of the roadway under Iowa Code § 321.354; and 2) violation of a city ordinance prohibiting double parking under Des Moines, Iowa, Mun. Code, ch. 114, art. VIII, § 114-358 (a)(9). The government concedes that Coleman was not guilty of the first alleged traffic violation because of a statutory exception for business and residential areas. See Iowa Code § 321.354.

Regardless of the validity of a stop based on Iowa Code § 321.354, we agree with the district court that the stop was lawful because of the officer's observation of a traffic violation for double parking. See Des Moines, Iowa, Mun. Code, ch. 114, art. VIII, § 114-358 (a)(9) (prohibiting stopping or parking a vehicle "on the roadway side of any vehicle stopped or parked at the edge or curb of a street"). The record indicates that the vehicle in which Coleman was a passenger violated this ordinance. Nevertheless, Coleman argues that the government failed to introduce evidence to establish a prima facie violation of the double parking ordinance because the testifying officer never specifically testified that Coleman's vehicle was in fact stopped or

parked <u>next</u> to any other parked vehicle. However, the officer testified that stopping in the middle of the street next to a vehicle already stopped on the curbside violates the city's double parking ordinance and that Coleman's vehicle was in fact stopped in the middle of a street with parked cars on both sides, blocking traffic from a nearby intersection. Although a minor infraction, the officer described his observation of a traffic violation. The stop was thereby lawful because the violation gave the officers probable cause to effectuate a traffic stop on the vehicle. <u>See</u> <u>Jones</u>, 275 F.3d at 680.

Moreover, a vehicle stop is lawful based upon reasonable suspicion of criminal activity. <u>See</u> <u>United States v. Mora-Higuera</u>, 269 F.3d 905, 909 (8th Cir. 2001) ("an investigative stop of a vehicle does not violate the Fourth Amendment if the police have reasonable suspicion that the vehicle or its occupants are involved in criminal activity.") (citation omitted); <u>Terry v. Ohio</u>, 392 U.S. 1, 25-31, 88 S. Ct. 1868 (1968). A stop based on reasonable suspicion must be supported by specific and articulable facts. <u>United States v. Hughes</u>, 517 F.3d 1013, 1016 (8th Cir. 2008). In determining whether an officer had a "particularized and objective basis for suspecting legal wrongdoing," reviewing courts must look at the totality of the circumstances, allowing officers to draw on their experience and training. <u>United States v. Arvizu</u>, 534 U.S. 266, 273, 122 S. Ct. 744 (2002). "Factors consistent with innocent travel, when taken together, can give rise to reasonable suspicion, even though some travelers exhibiting those factors will be innocent." <u>United States v. Carpenter</u>, 462 F.3d 981, 986 (8th Cir. 2006). Although reasonable suspicion must be more than a "hunch," the Fourth Amendment only requires an officer to articulate "some, minimal objective justification for an investigatory stop." <u>United States v. Fuse</u>, 391 F.3d 924, 929 (8th Cir. 2004).

Our review of the record convinces us the officers had reasonable suspicion of illegal activity sufficient to warrant the stop. The officers saw a car stopped illegally and blocking traffic in an area known for drug trafficking. The car had Illinois plates.

-4-

Officer testimony stated that Illinois was the prime source state for cocaine in the Des Moines area and that an out-of-state licence plate can be indicative that the vehicle is a rental being used for drug trafficking to make detection and identifying the occupants more difficult. The officers watched an individual known to be involved in narcotics activity in the past leave his own vehicle across the intersection and enter Coleman's vehicle. At this point, an occupant of Coleman's vehicle exited the car, opened the trunk, removed something from it, and re-entered the car. Even if an officer cannot see an actual drug exchange, the totality of circumstances may still give rise to reasonable suspicion of criminal activity. See United States v. Bustos-Torres, 396 F.3d 935, 942 (8th Cir. 2005). The observing officers were experienced in narcotics enforcement and recognized these events as consistent with a street level drug sale. See United States v. Williams, 139 F.3d 628, 630 (8th Cir. 1998) (acts consistent with drug trafficking by a suspected drug dealer in area known for drug activity created reasonable suspicion justifying a stop). Taking the events and observations as a whole, an officer could reasonably suspect that drug activity was afoot warranting an investigatory stop of Coleman's vehicle.

Therefore, the stop was lawful based on both the officer's observation of a traffic violation and reasonable suspicion of drug activity. The motion to suppress was properly denied.

### B. Right to effective assistance of counsel.

Claims of ineffective assistance of counsel normally are raised for the first time in collateral proceedings under 28 U.S.C. § 2255. United States v. Hill, 91 F.3d 1064, 1072 (8th Cir. 1996). Coleman first asserted a claim of ineffective assistance of counsel in his initial § 2255 petition. The district court found that Coleman's trial counsel was ineffective for failing to file a timely notice of appeal. The district court dismissed the other ineffective assistance claim, failing to call defense witnesses, as

moot but without prejudice. On appeal, Coleman now argues he was denied his right to effective assistance of counsel under the Sixth Amendment when his trial counsel conceded to the jury that Coleman was guilty of being a felon in possession of a firearm. This court has determined that we will not reach Coleman's new ineffective assistance of counsel argument on direct appeal but rather leave it for further development if Coleman chooses to file a § 2255 petition.

C. The plain error in the jury instruction for 18 U.S.C. § 924(c) did not deny Coleman of his due process rights.

The jury received, without objection, the then-existing 8th Circuit Model Jury Instruction for Possession of a Firearm in furtherance of a Drug Trafficking Offense under 18 U.S.C. § 924(c). The jury returned a verdict finding Coleman guilty of possession of the Ruger 9 mm handgun, located in the glove compartment, in furtherance of drug trafficking.[3] On appeal, Coleman asserts that he was denied his Fifth Amendment due process rights when the trial court, without objection by trial counsel, failed to properly instruct the jury on this count.

Where the defendant did not object to the challenged jury instruction at trial, this Court reviews the instruction for plain error. United States v. Kent, 531 F.3d 642, 655 (8th Cir. 2008). The defendant must show "(1) an error, (2) that was plain, (3) affects substantial rights, and (4)…seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Rush-Richardson, 574 F.3d 906, 910 (8th Cir. 2009). The government admits that the instruction was "error" that was "plain" based upon an 8th Circuit decision, nine months after the trial, finding a nearly

---

[3]The jury did not find that Coleman possessed the Taurus .40 caliber handgun, located in the backseat, in furtherance of drug trafficking.

identical instruction erroneous. See United States v. Kent, 531 F.3d 642 (2008).[5] Therefore, the issue is whether the error affected Coleman's substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. See Rush-Richardson 574 F.3d at 910.

Coleman's argument that the error affected his substantial rights fails because Coleman cannot demonstrate prejudice. See Kent, 531 F.3d at 656 (an error affects substantial rights if the error was prejudicial, which requires showing "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.") "To convict a defendant of possessing a firearm in furtherance of a drug trafficking crime, the jury must have found a nexus between the defendant's possession of the firearm and the drug offense." United States v. Thorpe, 447 F.3d 565, 568 (8th Cir. 2006). Coleman is unpersuasive in downplaying the nexus between his possession of the firearm and the drug offense. Coleman asserts that the gun could have been used for an independent firearm sale, a totally unrelated purpose not in furtherance of the drug sales. However, "we have repeatedly held that a jury may find the requisite nexus when a firearm is discovered in close proximity with drugs so as to support an inference that the firearm is for the protection of the drugs." United States v. Saddler, 538 F.3d 879, 888 (8th Cir. 2008), quoting United States v. Williams, 512 F.3d 1040, 1044 (8th Cir. 2008), cert. denied, --- U.S. ----, 128 S. Ct. 2918 (2008). The Ruger 9 mm was located along with cocaine and ecstacy in the glove box, directly in front of Coleman. Coleman also had a spare cartridge to the Ruger in his pocket and was actively selling cocaine and ecstasy prior to apprehension by the police. The proximity of the firearm to the drugs and Coleman himself

---

[5]In Kent, the Court reasoned that the instruction defined "in furtherance of" in nearly identical terms as the Supreme Court had defined "during and in relation to." Since prior decisions had determined that "in furtherance of" was a slightly higher level of participation than "during and in relation to," the court concluded that the instruction allowed the jury to convict the defendant on the lesser activity of possessing the firearm "in relation to" the drug offense. Kent, 531 F.3d at 654.

supports the jury's conviction on this count and undermines Coleman's claim that the jury instruction affected his substantial rights.

Coleman's attempt to analogize the facts of his case to <u>Rush-Richardson</u> is unpersuasive. <u>See</u> <u>Rush-Richardson</u> 574 F.3d at 912-913 (finding prejudice in the jury instruction for possession of a firearm in furtherance of drug trafficking). In <u>Rush-Richardson</u>, after a controlled buy from the defendant, a subsequent search of the defendant's house revealed guns in areas of the home other than the defendant's room, located away from drugs, and the defendant claimed he was not aware of the guns' presence. <u>Id.</u> In contrast, in this case, the gun was stored with the narcotics, accessible to Coleman if necessary to protect the narcotics, any money obtained from dealing, or himself. Thus, Coleman has not established a reasonable probability that he would not have been convicted of the offense if a proper instruction was used.

Moreover, the error did not substantially affect the fairness, integrity, or public reputation of the judicial proceeding. As the court found in <u>Kent</u>, a rule announcing that the judge's failure to act <u>sua sponte</u> by striking the then-existing model jury instruction is a step toward "blurr[ing] the line between an adversarial and inquisitorial system of justice." <u>Kent</u>, 531 F.3d at 656. Therefore the jury instructions did not deny Coleman his due process rights.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

BYE, Circuit Judge, concurring in part and dissenting in part.

I join in the Court's decision in most respects, but with one exception. I believe the erroneous jury instruction on the charge of possessing a firearm in furtherance of

a drug crime requires a new trial.  I therefore respectfully dissent from Section II(C) of the Court's opinion, and from the result.

The Court concludes the erroneous jury instruction did not affect Coleman's substantial rights without even conducting the appropriate inquiry, i.e., whether Coleman can show there is "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different."  United States v. Rush-Richardson, 574 F.3d 906, 911 (8th Cir. 2009) (citation omitted).  Instead, the Court focuses on whether the evidence established a nexus between the firearm and the drugs, citing sufficiency-of-the-evidence cases for the unremarkable proposition – inapplicable here – that  evidence is sufficient for a jury to find the requisite nexus when a firearm is discovered in close proximity with drugs.  But Coleman is not challenging the sufficiency of the evidence.  He contends there is a reasonable probability the jury may have acquitted him of the firearm-in-furtherance charge if properly instructed on the charge.  The fact that there was sufficient evidence for the jury to convict him is irrelevant; the analysis conducted by the Court is entirely unhelpful, and threatens to add to the confusion in future cases when courts are called upon to perform plain error review.

Notwithstanding the undisputed sufficiency of the evidence to convict Coleman of the firearm-in-furtherance charge, Coleman can show a reasonable probability the result of the proceeding would have been different if the jury had been properly instructed.  As the Court acknowledges, Coleman asserted he was not using the Ruger 9 millimeter gun in furtherance of his drug sales.  Coleman contends the gun was merely another one of his products, like the drugs, which he was attempting to sell.  Direct evidence introduced by the government's own witness supports Coleman's assertion.

The government called Eugene Brewer, one of the occupants in the Grand Prix vehicle stopped and searched by the officers, as a witness.  Brewer was sitting in the

back seat of the vehicle, on the passenger side. Coleman was sitting in the front passenger seat. Brewer testified to the events which occurred in the vehicle prior to the traffic stop. Brewer told the jury when he entered the car, Coleman directed his attention to the map pocket on the back side of Coleman's seat and told him he had "tools" for sale. "Tools" is a Chicago street term for guns. Inside the map pocket was the Taurus .40 caliber semi-automatic pistol.

Significantly, Brewer specifically referred to plural "tools" for sale, not a singular "tool." Thus, there was direct evidence introduced by the government indicating Coleman was selling *both firearm*s found in the car, rather than possessing either one of them in furtherance of a drug crime. Armed with this direct evidence as to Coleman selling both firearms, I cannot say with certainty that an able and experienced defense counsel could not have persuaded at least one juror there was reasonable doubt to overcome the mere inference – due to the proximity of the drugs and one of the firearms – that the Ruger handgun was used in furtherance of the drug crime. Indeed, as the Court acknowledges, the jury did not find Coleman guilty of the possession-in-furtherance count with respect to the Taurus .40 caliber pistol also found in the vehicle, despite its relative proximity to the drugs.

Because there is no dispute the jury was erroneously instructed, and the evidence created a close question as to whether Coleman was merely selling both firearms rather than using one of them in furtherance of a drug crime, Coleman's conviction on the firearm charge should be vacated and this case should be remanded for a new trial on that count.

I therefore must and do respectfully dissent.

_____

-10-