RILEY, Chief Judge,
concurring in part and concurring in the judgment.
I respectfully disagree with the majority’s analysis of the sixth issue. The majority sidesteps United States v. Kent, 531 F.3d 642 (8th Cir.2008), rewrites United States v. Brown, 560 F.3d 754 (8th Cir. 2009), and ignores much of United States v. Rush-Richardson, 574 F.3d 906 (8th Cir .2009).
I. Majority’s Analysis
A. Kent
The majority does not recount the facts of Kent, saying “[i]t was unnecessary for the Kent opinion to decide whether the error affected the defendant’s substantial rights, a question that the panel thought was ‘close.’ ” Ante at 1120. The majority implies the facts of Kent are irrelevant to the case before us. I disagree.
The defendant in Kent was arrested with two bags of crack cocaine and a firearm on his person. See Kent, 531 F.3d at 647. A loaded firearm, cash, crack cocaine, and men’s clothing were later found in Kent’s 16-year-old girlfriend’s bedroom. Id. In dicta, the Kent court opined it was “a close question” whether the defendant had proven sufficient prejudice to warrant plain-error relief. Id. at 656 (Benton, J., author).
For the reasons set forth in Part II.B. below, I believe Kent’s “close question” statement was ill-considered. Subsequent panels “might have gone in a different direction” and declined to adopt Kent’s dicta as precedent. See Rush-Richardson, 574 F.3d at 913 (Colloton, J., concurring). See also Passmore v. Astrue, 533 F.3d 658, 661 (8th Cir.2008) (noting a panel need not follow dicta, defined as “[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential”). But that is not what happened. What began as Kent’s “close question” dictum became the law of the circuit, a polestar in the prejudice determination. See, e.g., Rush-Richardson, 574 F.3d at 912 (majority opinion) (“The evidence here is relatively weaker ... compared to the evidence presented in Kent, where we said the evidence presented a ‘close question’ .... Thus, ... we are convinced, in light of our statement in Kent and our holding in Brown, the evidence in Rush-Richardson’s case suggests Rush-Richardson’s substantial rights were affected.”).[9] The majority effectively strips Kent of its precedential force. See Drake v. Scott, 812 F.2d 395, 400 (8th Cir.1987) (“One panel of this Court is not at liberty to disregard a precedent handed down by another panel.”). See also Eisner v. Macornber, 252 U.S. 189, 205, 40 S.Ct. 189, 64 L.Ed. 521 (1920) (“And what we have quoted from the opinion in that case cannot be regarded as obiter dictum, it having furnished the entire basis for the conclusion *1123 reached.”); Darr v. Burford, 339 U.S. 200, 225-26, 70 S.Ct. 587, 94 L.Ed. 761 (1950) (Frankfurter, J., dissenting) (“The disclosure of the reasoning by which a conclusion is reached cannot remotely be deemed dictum. A decision implies the process of reasoning which requires it.”).
If it was a “close question” whether the defendant in Kent suffered prejudice, then there is prejudice warranting plain-error relief in the case at bar. Although the evidence against the Vanovers is strong, neither Barb nor Butch was caught as “red handed” as the defendant in Kent, who was caught with a firearm and distribution-quantity drugs on his person.[10]
B. Brown
In Brown, a .38 caliber revolver, ammunition, a scale, $16,000 in cash, and a small amount of marijuana were seized from the defendant’s vehicle stored at a warehouse. See Brown, 560 F.3d at 761. A semiautomatic rifle, ammunition, and 35 pounds of marijuana were found in a storage unit leased by one of the defendant’s co-conspirators. Id. at 767-68. The Brown court reasoned the “evidence might support a finding that Brown possessed these firearms, but ... would not support a finding that Brown used or carried them.” Id. at 768 (emphasis in original). Brown concluded the defendant’s substantial rights were affected and reversed. See id.
It strains reason to conclude the evidence on the “in furtherance of’ element of the Vanovers’ § 924(c)(1)(A) convictions is materially stronger than the evidence discussed in Brown, such that reversal was warranted in Brown, but not here. This is not to say I agree with Brown, or that I am able to reconcile Brown with some of our most recent cases in this area of the law. See infra Part II.A. My point is, if reversal was appropriate in Brown, then reversal probably is appropriate here.
The majority attempts to distinguish Brown on its facts, averring that the presence of a tight nexus among a loaded firearm, distribution-quantity drugs, and each defendant tips the balance in the case at bar toward affirmance. The majority emphasizes “there is no indication” the two firearms at issue in Brown were loaded. Ante at 1121. On the other hand, there is no indication the two firearms in Brown were unloaded either.
Neither the Brown court, the parties, the witnesses, nor the district court made any mention of whether the firearms were loaded or unloaded in that case. Because the loaded or unloaded state of the firearms was a question the Brown court left open, it could not have been relevant to its holding. The parties and lawyers in Brown may be surprised to learn an outcome-determinative factor in their case was the absence of any indication in the record that the firearms were loaded.
The majority’s analysis, which recasts Brown’s holding by answering an unasked question about that case, is inconsistent with the traditional principles of stare de *1124 cisis underlying our common law jurisprudence. See Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 170, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004) (“Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.” (quoting Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925))). In effect, the majority overrules Brown, adhering to the logic of K.N. Llewellyn, The Bramble Bush 63 (1930) (“Every case lays down a rule, the rule of the case. The express ratio decidendi is prima facie the rule of the case, since it is the ground upon which the court chose to rest its decision. But a later court can reexamine the case and ... through examination of the facts ... narrow the picture of what was actually before the court and can hold that the ruling made requires to be understood as thus restricted.... And when you find this said of a past case you know that in effect it has been overruled.”). I do not agree with Brown, but I cannot distinguish it.[11]
“[T]he life of the law consists to a very large extent in the guidance both of officials and private individuals by determinate rules which ... do not require from them a fresh judgment from case to case.” H.L.A. Hart, The Concept of Law 135 (2d ed. 1994). Here, the predictability of the law suffers as the majority’s creative distinction leaves practitioners wondering what will happen in the next case. See Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (“Stare decisis ... promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.”).
The statute does not require the firearm be loaded to establish the “in furtherance of’ element. See 18 U.S.C. § 924(c)(1)(A). But the majority’s decision today will lead future panels to view the presence of a loaded firearm near distribution-quantity drugs as an outcome-determinative factor in the prejudice analysis, drifting away from the statutory language.
C. Rush-Richardson
In Rush-Richardson, 574 F.3d at 906, we adhered to Kent and Brown and reversed another § 924(c) conviction on plain-error grounds. In so holding, we explicitly relied on the facts that (1) “the government presented no definitive evidence of Rush-Richardson’s fingerprints on, or physical evidence connecting Rush-Richardson to, the firearms,” (2) “[o]ne fingerprint was discovered on one firearm, and that fingerprint was not Rush-Richardsoris,” and (3) the prosecutor’s closing argument emphasized the erroneous definition of “in furtherance of’ in the jury instructions. Id. at 912.[12]
The majority ignores or labels as “immaterial” these three important parts of Rushr-Richardson’s holding, which all mili *1125 tate in favor of reversal of the Vanovers’ convictions. Ante at 1121. In the Van-overs’ case, forensic analysis revealed fingerprints on the High Point’s magazine, but those fingerprints did not belong to either Butch or Barb. In her closing argument, the prosecutor stated:
[P]art of the instruction that the judge has given you is that the government need only prove that the firearm had the potential to facilitate. We don’t have to prove that either [of the defendants] pointed that gun at Debra Dale on December 19th, but what we do have to show you is that the firearm was present, both of them knew that the firearm was present and that they had control over that firearm.
In not weighing the absence of the Van-overs’ fingerprints, the presence of unidentified fingerprints, or the prosecutor’s closing argument, the majority ignores RushrRichardson’s holding that these three facts are relevant and weigh in favor of reversal. In effect, the majority today lends precedential force, not to the RushrRichardson majority’s opinion, but to the concurrence in Ruslv-Richardson, which disapproved of the majority’s reliance on fingerprint evidence. See Rush-Richardson, 574 F.3d at 914-15 (Colloton, J., concurring) (arguing “the absence of fingerprints and physical evidence does not in my view materially advance Rush-Richardson’s showing that the mistaken jury instruction affected his substantial rights on the ‘in furtherance’ element”).
II. What to Do
A. Conflicting Prior Panel Decisions
When the full precedential force of Kent, Brown, and Rush-Richardson is recognized, our precedents in this narrow area of the law do not squeeze into the analytical boxes in which the majority attempts to place them. Brown, for example, is irreconcilable with United States v. Mashek, 606 F.3d 922 (8th Cir.2010), and United States v. Coleman, 603 F.3d 496 (8th Cir. 2010). This is not surprising, because neither the Mashek opinion nor the Coleman opinion mentions Brown.[13]
We now are faced with a tangle of conflicting prior panel opinions. Under this circuit’s prior panel rule, when two or more previous panel decisions conflict, a subsequent panel is free to follow the decision which is more persuasive and faithful to the law. See Williams v. NFL, 582 F.3d 863, 879 n. 13 (8th Cir.2009), cert. denied, — U.S.-, 131 S.Ct. 566, 178 L.Ed.2d 413 (2010). Elsewhere I have expressed my disagreement with this formulation of the prior panel rule, joining the dissent in Williams v. NFL, 598 F.3d 932, 934-35 (8th Cir.2009) (Colloton, J., dissenting from denial of rehearing en banc) (characterizing this circuit’s prior panel rule as “peculiar” and fostering unpredictability in the law). But we may follow that rule here.
B. Analysis
After weighing our conflicting precedents, I conclude Mashek and Coleman are more persuasive and faithful to the law than Kent and Brown. Plain-error relief is not warranted here.
There is only a slight difference between the “during and in relation to” and “in furtherance of’ standards. See United States v. Gamboa, 439 F.3d 796, 810 (8th Cir.2006). The Supreme Court has observed that plain-error review should be “circumscribed,” that is, a power to be exercised “sparingly.” Jones v. United States, 527 U.S. 373, 389, 119 S.Ct. 2090, *1126 144 L.Ed.2d 370 (1999). “It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.” Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).
This case does not present one of the narrow circumstances in which the firearm reasonably could have been possessed “during and in relation to” drug trafficking, but not “in furtherance of’ drug trafficking, or the rare case in which our circumscribed plain-error power justifies the reversal of the Vanovers’ convictions. The evidence against the Vanovers is strong. The High Point was next to a large quantity of cash and drug packaging materials, in the same room as methamphetamine, ammunition, and drug paraphernalia, and near the edge of the bed for easy access. Dale testified Barb sold Dale methamphetamine in an adjacent master bathroom. I would not exercise our discretion to notice any plain error. See Weems, 217 U.S. at 362, 30 S.Ct. 544.
III. CONCLUSION
I fully concur in the opinion of the court with respect to the first through fifth issues. With respect to the sixth issue, I concur in the judgment only.

. The Rush-Richardson panel was unanimous on this point. See Rush-Richardson, 574 F.3d at 913 (Colloton, J., concurring) (“If a comparable instruction created a 'close' question ... in Kent, and crossed the threshold in Brown ... then it seems to follow that Rush-Richardson’s substantial rights were affected.... Our cases might have gone in a different direction ... but I ultimately agree with the disposition of this case in light of Brown and Kent.’’).

. In Weems v. United States, 217 U.S. 349, 362, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the Supreme Court held the plain-error "rule is not altogether controlled by precedent,” but "confers a discretion that may be exercised at any time, no matter what may have been done at some other time.” See also 21 C.J.S. Courts § 207 (“[T]he discretionary decision of an appellate panel to notice plain error is totally ad hoc, and a decision by one particular panel on one particular occasion to do so is not binding on subsequent panels, even when similar subject matter seems involved.”). The majority’s unstated premise that stare decisis applies in the plain-error context seems doubtful in light of Weems. For present purposes, however, I assume, as does the majority, that precedent controls our decision to grant or deny plain-error relief. If our review were totally ad hoc, I would deny plain error relief for the reasons stated in Part II.B. below.

. The majority says “there is a reasonable basis [here] to reconcile [these] decisions,” which "is the proper course for a panel of a multi-member court.” Ante at 1121. While I agree with the rule, I disagree that there is a reasonable basis here for reconciliation. The majority reconciles the decisions by ignoring the precedent of Kent, creating an unsupported, never discussed "fact” distinction in Brown and declaring the reasoning held material by the majority opinion in Rush-Richardson now "immaterial.” Such reconciliation, in my view, does not comport with the doctrine of stare decisis. Cf. Battaglia v. United States, 303 F.2d 683, 686-87 (2d Cir. 1962) (Friendly, J., concurring).

. Similarly, in reversing, the Brown court remarked "the government's closing argument exacerbated the error in the instructions.” Brown, 560 F.3d at 768.

. The parties did not bring Brown, Mashek, or Coleman to our attention. Mashek and Coleman were decided after oral argument.