# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1215
_____

John Coleman

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: December 19, 2013
Filed: April 25, 2014

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted John W. Coleman of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count 2"); possession of ecstacy with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count 3"); possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(I) ("Count 4"); and felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count 5"). The

district court[1] sentenced Coleman to a total of 300 months' imprisonment. On appeal, this court affirmed the judgments and sentences entered against Coleman. *United States v. Coleman*, 603 F.3d 496 (8th Cir. 2010).

Thereafter, Coleman petitioned to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, arguing, among other things, that his trial counsel was ineffective for conceding to the jury that Coleman was guilty of being a felon in possession of a firearm under Count 5. The district court denied Coleman relief but issued a certificate of appealability on this claim. We affirm.

## I. *Background*

Coleman was a passenger in a vehicle that officers of the Des Moines Police Department stopped for a traffic violation. 603 F.3d at 498. Coleman was seated in the front seat passenger side of the vehicle. *Id.* The officers arrested Coleman after he provided them with false information during questioning. *Id.* "A 9 millimeter magazine was discovered on Coleman. A loaded Ruger 9 millimeter handgun [("Ruger")], cocaine[,] and ecstasy tablets were discovered in the glove box in front of Coleman's seat. A loaded Taurus .40 caliber handgun [("Taurus")] and a loaded magazine were discovered behind Coleman's seat." *Id.* Following his indictment, Coleman proceeded to trial on Counts 2–5.[2]

During opening argument, Coleman's trial counsel stated:

> The stipulations that will come in are the fact that Mr. Coleman was, in fact, in possession of the .40-caliber Taurus and he was in possession of the 9-millimeter handgun.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

[2]Count 1 of the indictment did not pertain to Coleman.

The evidence will show, however, that the other individuals in the car were responsible for the drugs and that Mr. Coleman did not have any knowledge of the fact that the narcotics were in the vehicle.

In actuality, Coleman's stipulation provided that the guns had moved in interstate commerce and that Coleman was a felon but *did not* state that Coleman was conceding to "possession" of the firearm. The stipulation provided:

2. The parties agree and stipulate that the Ruger 9 mm handgun and a Taurus 40 caliber handgun, which the parties agree and stipulate are firearms, and ammunition that constitute exhibits 1-12 that were seized during a traffic stop of a white Pontiac at approximately the 1200 block of University Ave[.] in Des Moines, Iowa, on May 17, 200[6], were each manufactured outside the State of Iowa.

3. The parties agree and stipulate that prior to May 17, 200[6], Defendant John Coleman had been convicted of a crime punishable by imprisonment for a term exceeding one year as referenced in Title 18, United States Code, Section 922(g).

In his closing argument, Coleman's trial counsel admitted that Coleman was in possession of both firearms and directed the jury to find Coleman guilty of Count 5—felon in possession of firearms and ammunition. However, trial counsel asserted that Coleman *did not* possess the firearms in furtherance of a drug trafficking crime—Count 4:

The one thing [that] we will tell you is in the stipulation, Exhibit No. 19, Mr. Coleman acknowledges he was in the state of Indiana and he purchased two firearms. There were three purchased that day, but Mr. Coleman, the subject of this criminal case, there's two. He acknowledges that.

And I will tell you on behalf of Mr. Coleman, as his defense attorney, you are obligated to find him guilty of Count 5. That is the fact.

-3-

He's guilty of it. He stipulated to the fact that he's a felon and he's in possession of firearms. Count 5 is really easy for you. He's guilty.

But what he's not guilty of and what he's here contesting against the United States Government is their effort to try to draw the fact that he is a convicted felon in possession of firearms into a drug transaction, and then to argue even further, more tenuous than that, that somehow these two firearms had a direct bearing on a drug transaction that nobody saw, nobody has any direct proof of, no controlled buy, no surveillance, no statements and admissions.

* * *

Now, possession of a firearm in furtherance of a drug-trafficking offense, that's the piggyback that they want. He's got a gun, he's a felon, so there's Count 5. You're guilty on that. Write it down. He's guilty on it.

Then, he's dealing drugs, folks, cocaine and Ecstasy, MDMA, and then further you put those two together, and, boy, we got this other charge, which is the fact that he had possession of a firearm in furtherance of a drug-trafficking offense.

One of the parts of that instruction says, quite simply, the presence of a firearm cannot be the result of accident or coincidence. What do we have? What do we have to draw the connection between the gun in a pouch in the back seat and a gun in a glove box and drug trafficking?

You know, the fact that they are there together is not enough. Don't let the Government try to tell you that it is. It's circumstantial evidence. But what did the Government prove with regard to whether there was drug trafficking? Mr. Brewer telling you there's drug trafficking. Nobody else.

Now, what you also have is, as I said, you take a look at what went on in Indiana with regard to the purchase of the guns. He clearly went and purchased the guns, paid the thousand dollars, gave it to Brunson, and Brunson gives it to Cardwell and they buy the guns.

-4-

* * *

So we have that, and then, as I said, look at Jury Instruction No. 8. What did the Government tell you they were going to prove? They were going to prove that John Coleman did these things.

Now, at the time after a day and a half of trial, we've got a jury instruction that says aiding and abetting. "Well, we didn't quite prove that John Coleman did it, but, ladies and gentlemen of the jury, you know what you've got to do? Just take everybody. Did he aid and abet anybody? Did he do anything?"

Was it Brunson that he aided? Was it Brewer he aided? Who was it that he aided?

Just look at that jury instruction. Three things they've got to prove. Have known that the crime of possession of a firearm in furtherance of a drug-trafficking crime was being committed. He's the one in possession of the guns. He's not in furtherance of any drug trafficking. Aiding and abetting? He's the one that has the guns.

Having knowingly acted in some way for the purpose of causing, encouraging, or aiding the crime of possession of a firearm in furtherance of a drug crime. He's not aiding and abetting. He has the guns.

And having acted knowingly. The Government, for want of a better word—and you're the judge of this—they swung and missed on John Coleman, but they want an aiding and abetting instruction that says, "Well, if you didn't get John, it was somebody else that was doing it, and he aided and abetted it." The evidence isn't such.

The evidence is Mr. Coleman was in possession of these guns, pure and simple. I don't know who had those drugs, but, boy, when they started shaking people out of that car, drugs are falling out on the ground all over the place, But we do know one thing: John Coleman is in the back of a squad car handcuffed.

-5-

The facts are what they are, and that's why we try cases, because sometimes it isn't what it appears to be. And I would submit to you, in this particular case, it isn't what it appears to be.

Mr. Coleman has accepted responsibility. We stipulated to the fact that he's a felon and he has two guns that he purchased in the state of Indiana. What Mr. Coleman does contest is that he had anything to do with any drugs or any drug dealing or any trafficking.

The jury found Coleman guilty on all charged counts. But, in reaching its verdict, the jury determined that Coleman possessed the Ruger in furtherance of a drug trafficking crime but did not possess the Taurus in furtherance of such crime. The district court sentenced Coleman to 240 months' imprisonment on Counts 2 and 3 and 60 months' imprisonment on Count 5, to be served concurrently. The court sentenced Coleman to 60 months' imprisonment on Count 4, to be served consecutively to the sentences on the other counts, resulting in a total term of 300 months' imprisonment.

Coleman appealed his conviction, arguing that (1) "the district court erred in denying his motion [to suppress] because his arrest and the evidence against him were the products of an illegal vehicle stop," *Coleman*, 603 F.3d at 498; (2) "he was denied his right to effective assistance of counsel under the Sixth Amendment when his trial counsel conceded to the jury that Coleman was guilty of being a felon in possession of a firearm," *id*. at 500; and (3) "he was denied his Fifth Amendment due process rights when the trial court, without objection by trial counsel, failed to properly instruct the jury on [Count 4]," *id*. at 500–01. This court denied relief on his first and third claims and declined to rule on the ineffective-assistance-of-counsel claim, "leav[ing] it for further development if Coleman chooses to file a § 2255 petition." *Id*. at 500.

Coleman then petitioned to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming that he is entitled to relief because (1) counsel was ineffective

for failing to interview and subpoena defense witnesses to testify at trial, and (2) counsel was ineffective for conceding to the jury that Coleman was guilty of Count 5—being a felon in possession of a firearm. He sought leave to amend his petition to add an additional claim that counsel was ineffective for failing to object to the use of the jury instruction for Count 4—possession of a firearm in furtherance of a drug trafficking crime.

Relevant to the present appeal, Coleman argued that his counsel was ineffective for conceding Coleman's guilt to Count 5 because Coleman never stipulated that he "possessed" a firearm. He claimed that when counsel made this concession to the jury, counsel effectively took away his right to contest Count 5 at trial. The government conceded that Coleman's counsel misstated the trial stipulation. The government also did not contest Coleman's contention that he never agreed to concede that he possessed the firearms. Nevertheless, the government argued that Coleman was not entitled to relief because (1) counsel's concession was a trial strategy to gain credibility with the jury on other issues, and (2) Coleman suffered no prejudice because of the overwhelming evidence of his guilt.

The district court denied Coleman relief on this claim, explaining that Coleman had "virtually no hope of acquittal" on Count 5. The court acknowledged that "counsel may have performed deficiently in conceding guilt" on Count 5 if Coleman never agreed to the concession. However, the court concluded that Coleman failed to prove that "he was prejudiced by the deficiency." The court explained:

> Coleman had the ammunition for one of the guns in his pocket, there was strong evidence that he bought the guns, and at least one gun was found within easy reach of where he had been seated. Although the indictment charges Coleman with possession of firearms and ammunition, "the government was only required to prove that [Coleman] possessed a firearm *or* ammunition to establish a violation of 18 U.S.C. § 922(g)(1), not that he possessed both." *United States v. Thompson*, 560

F.3d 745, 748 (8th Cir. 2009). There is no reasonable probability Coleman would have been acquitted of any of the charges absent counsel's concession, and he therefore is not entitled to relief.

In addition to denying Coleman relief on this claim, the district court also denied Coleman relief on his first ineffective-assistance claim and denied Coleman leave to amend his petition to add a claim that his counsel was ineffective for failing to challenge the jury instruction on Count 4. The district court issued Coleman "a Certificate of Appealability on Coleman's claims of ineffective assistance of counsel for failure to call witnesses and in conceding guilt on the felon in possession charge." In the present appeal, Coleman only challenges the district court's ruling on the latter.

## II. *Discussion*

On appeal, Coleman argues that he was denied effective assistance of counsel when his trial counsel effectively pleaded Coleman guilty, without his consent, to Count 5—felon in possession of firearms and ammunition. According to Coleman, his counsel misstated the trial stipulation, admitted in his opening statement that Coleman possessed both firearms, and directed the jury to find Coleman guilty of Count 5. Coleman asserts that counsel's error prejudiced him because the concession authenticated and bolstered the government's case on all of the charges, including Count 4.

To prove a violation of his Sixth Amendment right to counsel, Coleman must demonstrate that his trial "counsel's performance was deficient and that the deficiency prejudiced the defendant." *Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).[3] Coleman proves

---

[3]In denying Coleman relief on his § 2255 petition, the district court analyzed whether *United States v. Cronic*, 466 U.S. 648 (1984), or *Strickland* applied to Coleman's claim, and it concluded that *Strickland* applied. "*Cronic* set forth three situations in which counsel was so plainly deficient that prejudice can be presumed."

prejudice by "demonstrat[ing] a reasonable probability that his sentence would have been different but for the deficient performance." *Id*. (citation omitted). "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). Because Coleman must satisfy both *Strickland* prongs to prevail on his ineffective-assistance claim, "we need not 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" *Id*. (quoting *Strickland*, 466 U.S. at 697). "When there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice." *Christenson v. Ault*, 598 F.3d 990, 997 (8th Cir. 2010) (citing *Strickland*, 466 U.S. at 700 ("Given the overwhelming aggravating factors, there is no reasonable probability that the omitted evidence would have changed the conclusion."); *Reed v. Norris*, 195 F.3d 1004, 1006 (8th Cir. 1999) ("We find it unnecessary to discuss the reasonableness of counsel's conduct because, given the overwhelming evidence of [petitioner's] guilt presented at trial, we find that it would be impossible for him to demonstrate prejudice under *Strickland*.")).

In the present case, we need not discuss whether trial counsel's conduct was deficient because we find overwhelming evidence of Coleman's guilt on Count 5, which is the count on which trial counsel conceded Coleman's guilt. *See Reed*, 195 F.3d at 1006. As the district court noted, the indictment charged Coleman with possession of firearms *and* ammunition; however, "the government in this case was required to prove only that [Coleman] possessed a firearm *or* ammunition to establish a violation of 18 U.S.C. § 922(g)(1), not that he possessed both." *United States v. Thompson*, 560 F.3d 745, 748 (8th Cir. 2009).

Overwhelming evidence exists that Coleman possessed the firearms and ammunition; therefore, Coleman cannot prove prejudice. "The Ruger 9 mm was

---

*Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013) (citing *Cronic*, 466 U.S. at 659–60). On appeal, Coleman has not asserted that *Cronic* applies and analyzes his claim under *Strickland*; therefore, Coleman must prove prejudice.

located . . . in the glove box, *directly in front of Coleman*. Coleman also had a *spare cartridge to the Ruger in his pocket . . . .*" *Coleman*, 603 F.3d at 501 (emphases added). Thus, Coleman *actually possessed* the ammunition to the Ruger, which matched the Ruger found directly in front of Coleman in the glove box. This evidence overwhelmingly demonstrates that Coleman violated § 922(g)(1).

Not only does the discovery of the spare cartridge on Coleman's person and its match to the Ruger found in the glove box overwhelmingly establish Coleman's guilt on the § 922(g)(1) offense, but trial testimony also provides overwhelming evidence that Coleman possessed both the Ruger and Taurus, as his counsel conceded. Trial testimony established that Gary Cardwell, the purchaser of the firearms, picked Coleman out of a photo lineup and identified Coleman as (1) going to the gun store with Cardwell, (2) picking out the firearms for Cardwell to purchase, (3) giving Cardwell the money to purchase the firearms, and (4) paying Cardwell for purchasing the firearms with "$100 and some crack." Edward Earl, a sales associate at the gun store where Cardwell purchased the firearms, testified that while "Mr. Cardwell" purchased the firearms, the purchase "was unique in the matter of one man purchasing three weapons[, which included the Ruger and Taurus,] while there was two others with him." Earl identified Coleman as being one "who did not make the actual purchase but [was] present" during the purchase. The purchase occurred one day before the traffic stop. And, Eugene Brewer, one of the passengers in the vehicle at the time of the stop, testified that Coleman offered to sell him the firearms shortly before the traffic stop. According to Brewer, after law enforcement got behind the vehicle but prior to the stop, Coleman was trying to lock the glove box, which contained the Ruger.

Despite the overwhelming evidence of Coleman's guilt on Count 5, Coleman argues that he was prejudiced by his counsel's concession because "the government's evidence tying Coleman to the guns was no better than the evidence tying Coleman to the drugs that were found." He contends that the concession "authenticated and

-10-

bolstered the government's case on all of the charges including possession of the drugs found in the glove compartment. More importantly, it admitted one of the two elements, the possession element, necessary to convict Coleman of possession of a firearm in furtherance of drug trafficking (Count 4)." He maintains that "[i]f it were not for counsel's unwarranted plea of guilty to the possession of both firearms, there is a reasonable probability that the jury would have found that [a codefendant] actually possessed the Ruger."

"To prove that [Coleman] violated 18 U.S.C. § 924(c)(1)(A)(i), the government [had to] show the following: (1) [Coleman] participated in a drug trafficking crime; (2) he possessed a firearm; and (3) his possession of the firearm was 'in furtherance' of the drug trafficking crime." *United States v. Nobari*, 574 F.3d 1065, 1079–80 (9th Cir. 2009). Coleman's counsel conceded *only* the second element—that Coleman possessed the firearms. As explained *supra*, overwhelming evidence supports a finding that Coleman did "possess" the firearms, which is an element of Count 4. But Coleman's trial counsel *never* conceded the remaining two elements—that Coleman participated in a drug trafficking crime or possessed the firearms in furtherance of that crime. Furthermore, the jury's verdict reflects that it did not "conflate" Counts 4 and 5 because, as even Coleman concedes in his brief,[4] the jury determined that Coleman possessed the Ruger in furtherance of a drug trafficking crime but not the Taurus.

Coleman additionally argues that "[d]espite counsel's unwarranted plea of guilty [to the possession of both firearms], there is a reasonable probability that the jury would have acquitted on Count 4, if they had received the proper instruction." Thus,

_____

[4]In challenging the jury instruction on Count 4, Coleman states, "Although the verdict indicates that the jurors may have discerned a difference between Coleman's possession of the Ruger and his possession of the Taurus, it does not reflect an understanding of the difference between possession 'in furtherance of' and possession 'during and in relation to.'"

Coleman asserts that the "erroneous" jury instruction magnified the effect of the attorney's concession, thereby prejudicing him as to Count 4.[4]

In Coleman's direct appeal, he argued "that he was denied his Fifth Amendment due process rights when the trial court, without objection by trial counsel, failed to properly instruct the jury on [Count 4]." *Coleman*, 603 F.3d at 500–01. The government conceded "that the instruction was 'error' that was 'plain' based upon an 8th Circuit decision, nine months after the trial, finding a nearly identical instruction erroneous." *Id.* at 501 (citing *United States v. Kent*, 531 F.3d 642, 654 (8th Cir. 2008) (reasoning that the instruction defined "in furtherance of" in almost identical terms as the Supreme Court had defined "during and in relation to" and concluding that because prior decisions had determined that "in furtherance of" was a slightly higher level of participation than "during and in relation to," the instruction erroneously permitted the jury to convict the defendant on the lesser activity of possessing the firearm "in relation to" the drug offense). Applying plain-error review, we concluded that "Coleman's argument that the error affected his substantial rights fail[ed] because Coleman [could not] demonstrate prejudice." *Id.* (citing *Kent*, 531 F.3d at 656). We explained:

> Coleman is unpersuasive in downplaying the nexus between his possession of the firearm and the drug offense. Coleman asserts that the gun could have been used for an independent firearm sale, a totally unrelated purpose not in furtherance of the drug sales. However, "we have repeatedly held that a jury may find the requisite nexus when a firearm is discovered in close proximity with drugs so as to support an inference that the firearm is for the protection of the drugs." *United*

---

[4]In his reply brief, Coleman concludes that "[c]onsidering the totality of the evidence' in the context of the trial, which included an erroneous 'in furtherance' instruction, 'there is a reasonable probability that at least one juror would have struck a different balance.'"

*States v. Saddler*, 538 F.3d 879, 888 (8th Cir. 2008), *quoting United States v. Williams*, 512 F.3d 1040, 1044 (8th Cir. 2008), *cert. denied*, 553 U.S. 1099, 128 S. Ct. 2918, 171 L. Ed. 2d 852 (2008). The Ruger 9 mm was located along with cocaine and ecstacy in the glove box, directly in front of Coleman. Coleman also had a spare cartridge to the Ruger in his pocket and was actively selling cocaine and ecstasy prior to apprehension by the police. The proximity of the firearm to the drugs and Coleman himself supports the jury's conviction on this count and undermines Coleman's claim that the jury instruction affected his substantial rights.

*Id*. We found that "the error did not substantially affect the fairness, integrity, or public reputation of the judicial proceeding" and "the jury instructions did not deny Coleman his due process rights." *Id*. at 502.

Before the district court, Coleman sought leave to amend his habeas petition to add the claim that counsel was ineffective for not challenging the jury instruction on Count 4. Coleman wanted "to raise a claim that the jury instruction inadequately instructed the jury as to the elements of possession of a firearm in furtherance of a drug trafficking offense." The district court concluded that Coleman's "jury instruction claim [was] . . . untimely" and failed to relate back to his original § 2255 petition. Therefore, it denied Coleman's request to amend his petition. The district court *did not* issue a certificate of appealability on this issue.

In this appeal, Coleman is attempting to use his claim that counsel was ineffective for conceding that he possessed the firearm—the issue on which the district court granted a certificate of appealability—to raise the claim that counsel was ineffective for not objecting to the jury instruction on Count 4. But Coleman was not granted a certificate of appealability on this issue. Exercising our discretion, we decline to address Coleman's claim. *See, e.g.*, *Wright v. Bowersox*, 720 F.3d 979, 987 n.7 (8th Cir. 2013) ("We note Wright was not granted a certificate of appealability on this ground and therefore have the discretion to decline to review the district court's

denial. *See* 28 U.S.C. § 2253(c)(3) (a federal court of appeals considers only the 'specific issue or issues' listed in the certificate of appealability)."); *Smith v. Bowersox*, 311 F.3d 915, 922 (8th Cir. 2002) ("We have not granted a certificate of appealability on this claim either, and so we decline to consider it.").

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____